Insurance Co. of North America v. Hegewald.

# INSURANCE COMPANY OF NORTH AMERICA
# *v.* HEGEWALD.

[No. 19,991. Filed April 3, 1903. Rehearing denied January 8, 1904.]

APPEAL AND ERROR.—*Pleading.*—*Harmless Error.*—Where it clearly appears that the action was tried and determined upon an additional paragraph of complaint, alleged errors in the original complaint will not be considered on appeal. *p. 632.*

INSURANCE.—*Complaint.*—*Averment as to Ownership of Property.*—An averment in a complaint in an action on an insurance policy that "after the loss and injury of his said property insured by said policy as aforesaid, defendant's adjuster, in company with the plaintiff, visited the premises," etc., taken in connection with facts showing ownership at the time of the execution of the policy sufficiently shows that plaintiff was the owner of the insured property at the time it was damaged by the fire in question. *pp. 637, 638.*

SAME.—*Arbitration and Award.*—An award made by appraisers appointed under a provision of an insurance policy that if a disagreement arose in respect to the amount of the loss sustained, the question should be submitted to two competent and disinterested appraisers, was properly set aside in an action on the policy, where it appeared that the appraiser selected by the company was in its employ, living in a distant city, and, though represented by the company's agent to be disinterested, acted wholly in the interest of the company, and that said appraiser, acting in conjunction with an umpire selected at the suggestion of the company's agent, procured an appraisement to be made at less than one-half of the loss sustained. *pp. 638-648.*

ARBITRATION AND AWARD.—*Improper Influence.*—A party to an arbitration who by his own acts either attempts to corrupt or improp-

erly influence one or more of the arbitrators to make an award in his favor can not be heard to say that such act or acts on his part were ineffectual to accomplish the purpose designed. *pp. 647, 648.*

From Floyd Circuit Court; *W. C. Utz*, Judge.

Action by Arthur F. Hegewald against the Insurance Company of North America of Philadelphia. From a judgment for plaintiff, defendant appeals. Transferred from the Appellate Court, under §1337u Burns 1901. *Affirmed.*

*S. N. Chambers*, *S. O. Pickens* and *C. W. Moores*, for appellant.

*C. L. Jewett* and *H. E. Jewett*, for appellee.

JORDAN, J.—Action by appellee to recover upon a policy of fire insurance issued to him by appellant, insuring thereby a dwelling-house against loss by fire. The original complaint consisted of a single paragraph, but subsequently an additional paragraph, numbered two, was filed; and upon this latter paragraph it clearly appears that the action was tried and determined in the lower court, and the special finding based thereon. Consequently we dismiss, without consideration, the errors alleged by appellant in regard to the first paragraph, for, if sustained, under the circumstances, they would be harmless. Appellant, having unsuccessfully demurred for insufficiency of facts to the second paragraph, filed an answer in two paragraphs; the first being the general denial, and the second setting up affirmative matter, to which the plaintiff replied. Upon the issues joined, the court, upon request, made a special finding of facts, and stated its conclusions of law thereon favorable to the plaintiff, and over the defendant's exceptions thereto, and over its motion for a new trial, rendered judgment on the special finding, awarding the plaintiff the sum of $950 as damages, which the court found he had sustained as a result of the fire in dispute.

Counsel for appellant argue for a reversal (1) that the court erred in overruling the demurrer to the second para-

graph of the complaint; (2) in overruling the demurrer to the second paragraph of reply; (3) that the court erred in its several conclusions of law; (4) denying the motion for a new trial.

Under the second paragraph of the complaint the plaintiff sought to recover upon the insurance policy for a loss sustained by him by reason of a fire destroying the insured property, and also sought to set aside a certain appraisement or award of damages made by appraisers selected by the parties under the provisions and conditions of the policy in suit. As preliminary, it may be said that the second paragraph of the complaint is not a model in its character as a pleading, and contains some general and bald averments. We have endeavored, however, to summarize the facts therein alleged, and the following may be said, in the main, to be the principal or material ones disclosed by the paragraph in question: The defendant is shown to be a corporation organized under the laws of the state of Pennsylvania, and is engaged in the business of fire insurance, having an office in the city of New Albany, Floyd county, Indiana. On June 18, 1900, the plaintiff was the owner of a frame dwelling-house situated in said city, on the premises described in the complaint, which property the defendant on said day insured against loss by fire to the amount of $1,500, and duly executed to the plaintiff the fire insurance policy in suit, as the contract in respect to said insurance. This policy is filed with and made a part of the complaint. On February 23, 1901, while the policy was in full force and effect, the property so insured was partially destroyed by fire, and was thereby injured and damaged to the amount of $1,200. The value of the house at the time of the fire is shown to be $3,500. Immediately after the loss sustained by the fire, the plaintiff notified the defendant of the facts, and all further proof in regard to the loss sustained appears to have been thereupon waived by the defendant. In fact, it is shown

that the plaintiff duly performed all the conditions upon his part as exacted by the policy. No part of the damages sustained has been paid, and the whole is shown to be due and unpaid. In regard to plaintiff being the owner of the insured property at the time of its destruction by the fire, the complaint contains the following statement: "The plaintiff says that after the loss and injury to his said property insured by said policy as aforesaid, defendant's adjuster, in company with the plaintiff, visited the premises," etc. The policy, among other things, professes to be granted and issued upon and in reference to certain stipulations and conditions therein contained, among which are the following: "In case differences arise as to the amount of loss, the matter shall, at the written request of either party, be submitted to two competent and disinterested appraisers sworn to decide impartially, the assured and the company each selecting one, who shall determine the amount of such loss, and failing to agree they shall select an umpire, to be sworn as aforesaid, to whom they shall submit their differences, and the award in writing of any two shall be binding upon the assured and the company as to the amount of such loss, but shall not determine any legal liability under this policy, and until such appraisal, if requested, shall be had, the loss shall not be payable. One-half of all appraisers' fees under this policy shall be paid by the parties respectively."

It appears that immediately after the defendant received notice of the fire it sent its agent to New Albany to inspect and adjust the loss occasioned thereby, but that he and the plaintiff were unable to agree upon the damages sustained, and thereupon the defendant, by and through its said agent, demanded that, in compliance with the conditions or provisions of the policy herein above set out, the amount of the loss or damages sustained by plaintiff by reason of the fire be submitted to two competent and disinterested appraisers. Thereupon it was agreed between

the plaintiff and the defendant that the question with respect to the amount of the loss be submitted to said appraisers, one to be selected by each of the parties. Plaintiff nominated and selected as one of the appraisers one Dora C. Nafius, a resident of Floyd county, Indiana, a competent and disinterested person in said matter; and the defendant, by and through its said adjusting agent, nominated and selected one Lynn B. Millikan, a resident of Indianapolis, Indiana, at that time an entire stranger to the plaintiff, and a person whose relations and connections with the defendant were wholly unknown to the plaintiff at the time he was so nominated by it. It appears that the defendant fraudulently represented to the plaintiff that said Millikan was a competent and disinterested person in the said matter in issue, but it is shown that these representations were false and untrue, for in fact he was one of the defendant's employes and in its service at the time he was so nominated and selected as an appraiser. During the arbitration of the matter in dispute it appears that he acted as the disbursing agent of the defendant in paying the expenses of the arbitration, and at all times during said appraisement he acted under the advice and the directions of the defendant, and acted entirely in its interest, with the purpose of procuring the appraisement of the loss in controversy at an amount less than one-half of that which the plaintiff had actually sustained on account of the fire. At the time of the selection of the appraisers as aforesaid the defendant insisted that the plaintiff, in advance, should agree with it in respect to a selection of an umpire who was to act in the event the two appraisers selected were unable to agree upon the amount of loss sustained; and in order and for the purpose of inducing the plaintiff to agree to the selection of one Charles S. Keller, nominated by the defendant as such umpire, it represented that said Keller was a competent, impartial, and disinterested person in respect to the matter

in controversy, and that he was qualified to act therein and decide impartially between the parties in regard to the loss sustained. Keller at the time he was selected was a resident of the city of Louisville, of the state of Kentucky, and was unknown to either the plaintiff or Nafius, the appraiser selected by the plaintiff; and the latter, relying upon and reposing confidence in the aforesaid statements and representations made by the defendant in regard to said Keller, agreed to his selection as umpire, and also advised Nafius, the said appraiser, to agree that Keller might be selected as umpire. The two appraisers, together with Keller, after he had been selected as the umpire, were each duly sworn faithfully and impartially to discharge their duties in the matter of making an appraisement of the loss sustained, and after being so qualified they entered upon the work of making an appraisement; but it appears that said appraisers were unable to agree in regard to the loss sustained by the plaintiff, for the sole reason that Millikan would only agree to appraise the damages to the building at an amount less than one-half of the damages actually sustained by the plaintiff. Upon their disagreement the umpire Keller acted in the matter in connection with said Millikan—as is shown, wholly in the interest of the defendant—and, for the purpose of defrauding the plaintiff in the appraisement of his loss, appraised and fixed the same at $461.80 in full of the loss sustained by him. When this amount was agreed to by Keller and Millikan, Nafius did not believe that it represented a fair appraisement, but, on the contrary, believed that an amount at least equal to the double of that found by Millikan and Keller should be awarded. Thereupon it appears that the defendant, for the purpose of procuring Nafius to sign the award so made, fraudulently and wrongfully represented to him that he had, by taking the oath to appraise the loss in dispute, obligated himself to sign the appraisement so made by Millikan and Keller, and that

he was therefore bound to sign said award. Nafius, as it appears, relying upon and believing the aforesaid representations, was thereby induced to sign his name to the appraisement as made, without any reference to the fairness or correctness thereof, and in signing the same he did not thereby agree that it was correct or fair. It appears that the appraisement is unfair and unjust and wholly inadequate, as the actual loss sustained by the plaintiff by reason of the fire exceeds $925, and that the said award or appraisement of $461.80 was procured on account of Millikan and Keller each acting partially and wholly in the interest of the defendant, and under an agreement with it to make an unfair and inadequate appraisement for the damages sustained. The prayer is that by reason of the aforesaid facts the said award and appraisement be set aside, as ineffectual and invalid as against the plaintiff and that he recover a judgment for $1,200 which is averred to be the amount of the damages which he actually sustained on account of the fire, and a demand is made for all other and proper relief.

One of the objections urged against the paragraph under consideration is that it fails to show that the plaintiff was the owner of the insured property at the time it was damaged by the fire in question. That such fact of ownership is material to the plaintiff's right of recovery on the insurance policy in suit is settled beyond controversy by many decisions of this court. Counsel for appellee, however, contend that the complaint sufficiently shows that the plaintiff was the owner of the property at the time it was injured by the fire, by the following statement or averment in said pleading, to wit: "This plaintiff says that after the loss and injury to *his property* insured by said policy as aforesaid." (Our italics.) While the failure of the pleader to show by positive and direct averments that the plaintiff was the owner of the building insured at the time it was damaged by the fire is justly open to criticism,

nevertheless, in consideration of the above averment, taken in connection with other facts alleged in the complaint, which tend to support the fact that appellee was the owner of the property in question at the time of the fire, we are satisfied that the objection of counsel for appellant can not be sustained. *Home Ins. Co.* v. *Duke,* 75 Ind. 535; *Phoenix Ins. Co.* v. *Benton,* 87 Ind. 132. The language used in respect to the point in dispute is "the loss and injury to his property insured by said policy." The adjective pronoun "his," as used, can not be otherwise construed than as showing that the property when injured or damaged by the fire belonged to the plaintiff. In the case of *Home Ins. Co.* v. *Duke, supra,* the words "his property" were held sufficient to show that the plaintiff in that case had an insurable interest in the property at the time the policy of insurance was executed.

It is next insisted by counsel for appellant that under the facts in regard to the appraisement or award in controversy, the plaintiff is not entitled to have it set aside. In this contention, however, we can not concur. It will be observed that by the stipulations of the policy in suit it is, in effect, provided that if a disagreement arises in regard to the amount of loss, then, on the request of either, party, the question in respect to damages sustained by reason of the fire shall be submitted to two competent and disinterested appraisers, who are to be sworn to decide impartially in the matter. If we accord to the facts which are well pleaded in the complaint their probative force, they certainly, to say the least, establish gross misconduct or misbehavior on the part of appellant, as well as on the part of the appraiser selected by it. In truth, it can be said that the facts disclose that the appraisement or award in controversy is so impressed with unfairness, partiality, and injustice, so far as it concerns appellee, that in good conscience a court should not hesitate to set it aside as invalid. It clearly appears that appellant, by and through

its adjusting agent, who was acting for and in its behalf, did not in the first instance nominate and select in the person of Millikan a competent and disinterested appraiser, within either the meaning of the terms or conditions of the policy, or the agreement made between appellee and appellant to submit the controversy over the loss to arbitration. It appears that this appraiser, at the time he was selected as such, was unknown to appellee. Appellant, however, is shown to have represented that he was a competent and disinterested person, when in truth such representations were not true. While it does not appear that he was pecuniarily interested in the matter, still it does appear that he was interested in behalf of appellant by reason of the alleged fact that he at the time was one of its employes. In the matter of the appraisement it is shown that Millikan acted, not according to his own judgment, but under the directions and advice of appellant, and that he acted wholly in the interest of the latter, and thereby procured an appraisement to be fixed at less than one-half of the loss actually sustained on account of the fire. Not only is Millikan shown to have been guilty of partiality and misconduct or misbehavior in making the appraisement, but likewise the umpire. These two persons, by reason of the false and misleading representations which they made to Nafius, as it appears, induced or procured the latter to concur with them in the appraisement of $461.80 as being the true and correct loss sustained by the appellee. It is certainly essential in order to render a person competent as an arbitrator in a disputed matter, that he be disinterested and also impartial. In fact, the authorities assert that bias and strong partiality on the part of one or more of the appraisers constitute a serious objection to the award made in a matter of arbitration. *Bash* v. *Christian,* 77 Ind. 290; Morse, Arbitration, 534; *Bradshaw* v. *Agricultural Ins. Co.,* 137 N. Y. 139, 32 N. E. 1055. Appraisers in cases like the one at bar are

considered as acting in a *quasi* judicial capacity, and in discharging their sworn duties they must act free from bias, partiality, or prejudice in favor of either of the parties. *Flatter* v. *McDermitt*, 25 Ind. 326; *Hickerson & Co.* v. *Insurance Co.*, 96 Tenn. 193  33 S. W. 1041, 32 L. R. A. 172.

In the appeal of *Bradshaw* v. *Agricultural Ins. Co.*, *supra*, the New York court of appeals held that the term "disinterested" does not simply mean an absence of pecuniary interests on the part of the appraiser, but requires that he be one not biased or prejudiced in the matter of the loss.  See *Brock* v. *Dwelling House Ins. Co.*, 102 Mich. 583, 61 N. W. 67, 47 Am. St. 562, 26 L. R. A. 623.  In the Bradshaw case, *supra*, which is in point, and very applicable to the question herein involved, the court also held that an appraisal of loss under an insurance policy which is grossly below the actual amount of the loss sustained will be set aside, although concurred in and agreed to by the appraiser nominated and selected on the part of the insured, where it appears that the insurance company has made a false statement in regard to the attitude of the appraiser nominated by it for the purpose of inducing the consent upon the part of the insured to his appointment, although in fact such appraiser is disinterested.  In the course of the opinion the court in that appeal, in considering the question therein involved in respect to the competency of appraisers to determine the loss under the provisions of a fire insurance policy, said:  "The policy says the appraiser must be 'competent and disinterested,' and this means some one who is not biased or prejudiced. * * *  While it may be true that in the appointment of these appraisers each party nominates some one who may be supposed friendly to the side nominating him, yet he should at the same time be disinterested, or, in other words, fair and unprejudiced.  The duties of these appraisers are to give a just and fair award, one which shall

honestly and fairly represent the real loss actually sustained by reason of the fire; and it is not the duty of either appraiser to see how far he can depart from that purpose, and still obtain the consent or agreement of his associate, or, in case of his refusal, then of the umpire. It is proper and to be expected that all the facts which may be favorable to the party nominating him shall be brought out by the appraiser, so that due weight may be given to them; but the appraiser is in no sense for the purpose of an appraisal the agent of the party appointing or nominating him, and he remains at all times under the duty to be fair and unprejudiced, or in the language of the policy, disinterested. When a false statement is made in regard to the attitude of a proposed appraiser for the purpose of inducing consent to his appointment, which is in that way obtained, and where concealment is practiced in regard to his real attitude to the company nominating him, and when in fact he is not disinterested, good ground is shown for setting aside an appraisal which is grossly below the actual loss sustained, although it has been concurred in and agreed to by the appraiser nominated by the insured."

In *Van Cortlandt* v. *Underhill*, 17 Johns. 405, persons were selected by the parties to appraise the value of buildings erected on certain demised premises during the term of the tenancy. In that action it was sought, among other things, to set aside the appraisement because of the conduct of the appraisers, and for the further reason that the valuation of the property in question was unreasonable and excessive. Yates, J., in his opinion in that case said: "It is further alleged, that this award ought to be set aside for the misbehavior or misconduct of the arbitrators: (1) in holding a private and *ex parte* meeting or communication with one of the parties, on the subject before them; and (2) for refusing to hear evidence material to the inquiry, with regard to the same subject, offered by one of.

the parties. There can be no doubt, if either of these charges is substantiated, that it must prove fatal to the award. In *Burton* v. *Knight,* 2 Vern. 515, the principle, as to the first exception, is decided, that private meetings of the arbitrators with one of the parties, on the subject before them, is partiality sufficient to vitiate the award." Allen, Senator, in the course of his opinion in the same case, said: "The court, I think, should not be very astute in searching for reasons to uphold an award, where the damages, upon the face of it, are manifestly excessive; but, on the other hand, they should be eagle-eyed in looking into the proceedings and conduct of the arbitrators, and the acts of the parties, to see that everything has been conducted fairly, impartially, and honestly."

In fact the authorities universally affirm that an award will be set aside not only for fraud or corruption alone, but also where it clearly appears that either one or more of the arbitrators or appraisers were influenced in their action by partiality and bias against the complaining party. *Herrick* v. *Blair,* 1 Johns. Ch. 101; *Todd* v. *Barlow,* 2 Johns. Ch. 551; Story, Eq. Jurisp. (11th ed.), §§1451, 1452; Morse, Arbitration, 106, 535; 3 Cyc. Law & Proc., 744, 745.

The facts disclosed by the second paragraph of the complaint, tested by the authorities to which we have referred, clearly establish that appellee is entitled to have the appraisement or award in question set aside, and to be awarded a recovery on the insurance policy in suit. Therefore the court did not err in overruling the demurrer to this paragraph of the complaint.

The facts as found by the court and set out in the special finding are along the lines of those stated in the complaint, and in the main they substantially sustain the latter. They disclose that Millikan, the appraiser, and Keller, the umpire, were not disinterested persons; that Milliken was the agent of appellant, and acted in the latter's interest in

making the award. It is further shown by the finding that both appellant and Millikan, the appraiser selected by it, were guilty of gross misbehavior or misconduct after he had been selected, and during the time the appraisement was in progress; that Millikan and Keller, the umpire, both acted together in the interest of appellant in making the appraisement in dispute; that the appraisement is grossly inadequate and unfair, being less than one-half of the amount of the loss actually sustained by appellee. It also appears that Nafius, the appraiser selected by appellee, did not agree to the award or appraisement as made by Millikan and Keller, but was induced to sign it under the belief that, because of his having been sworn as an appraiser in the matter, he was bound to sign the award as agreed to by his associates, etc. As the same reasons and authorities which led us to sustain the sufficiency of the complaint are applicable in upholding the sufficiency of the special finding, therefore, we need not repeat in regard to the same question what we have previously asserted, but content ourselves with holding that the conclusions of the court upon the special finding are fully warranted by the facts therein stated.

While it may be said that the evidence in the case does not justify or sustain the positive charge of fraud and corruption on the part of appellant or its agent, as alleged in the complaint, nevertheless, aside from the question of fraud or corruption there is evidence fully to support the material facts set out in the finding, and which alone would justify setting aside the award in controversy. Appellee was not bound to establish all of the grounds upon which he, in his pleading, based his right to set aside the award, for, if he established any one or more of such grounds or reasons which were sufficient for that purpose, he would be entitled to the relief demanded.

We briefly outline some of the facts which there is evidence to prove: Barring the award or appraisement in

the case, there can be no question of appellee's right to recover upon the fire insurance policy, for he is shown, as found by the court, to have fully and duly complied with all of the conditions on his part as required by the policy. The dwelling-house of appellee, which was partially destroyed by fire, and which is shown to have been thereby badly damaged, was situated in the city of New Albany, Indiana, and at the time of the fire appellee, with his family, resided therein. Immediately after the fire appellee had an estimate made in respect to the loss, and the latter was estimated as amounting to $1,200. In response to the notice given by appellee to appellant, apprising the latter of the fire and the loss sustained, appellant sent Mr. A. C. Mathews, its adjusting agent, to New Albany, to inspect the building and adjust the loss thereon. This agent and appellee were unable to agree, it seems, in regard to the amount of the loss; and thereupon the agent, under the conditions of the policy, demanded that an appraisement of the loss in question be made. Appellee and he entered into an agreement whereby it was agreed that two competent and disinterested persons be selected to appraise the loss in controversy. Appellee selected one Dora Nafius, a resident of New Albany, and appellant's said adjusting agent nominated and selected Mr. Lynn B. Millikan, a resident of the city of Indianapolis, Indiana, 110 miles from the city of New Albany. Appellee on the trial testified that the agent of appellant said he would get his man Millikan, at Indianapolis, to come down and serve as an appraiser in the matter. Millikan was an entire stranger to the appellee, and he seems to have objected to his being selected as an appraiser, and requested that the agent select some one in New Albany, or in the vicinity of that city. This he refused to do, and upon representing to appellee that Millikan was a competent and disinterested person in the matter, and would act fairly in making the appraisement, appellee con-

sented to his appointment. After selecting Millikan as
an appraiser, Mr. Mathews, it appears, insisted upon se-
lecting an umpire from the city of Louisville, Kentucky,
and finally succeeded in inducing appellee (who desired
that some one be selected as umpire who resided in New
Albany, or the vicinity thereof) to consent to the appoint-
ment of a Mr. Keller of Louisville, Kentucky, to act as
umpire in the case. Mathews, appellant's agent, it ap-
pears, after inducing appellee to consent to the appoint-
ment of Millikan, proceeded to communicate with him at
Indianapolis over the long-distance telephone, and re-
quested him to come to the city of Louisville, Kentucky,
and stop at the Galt House, a hotel in that city, at which,
it seems, Mathews was stopping at the time. It is dis-
closed that the first thing that appellant's agent did after
the arrival of Millikan at the Galt House, in Louisville,
late at night, was to go to Millikan's room and have a
conversation with him, and either on that night or the
next morning at the hotel—there being some conflict in
the evidence as to the particular time—the agent Mathews
appears to have attempted, at least, to prejudice the mind
of Millikan against the merits of appellee's loss, by stating
to him and making the claim that the estimate of $1,200
which had been made upon the loss was unreasonable or
"away out of sight." As showing improper acts both upon
the part of Millikan and appellant, it is disclosed by evi-
dence that the former was entertained, during the time he
acted as an arbitrator at the Galt House, at the expense
of appellant. It is shown that the amount which Millikan
was paid for serving as an appraiser was something over
$15 per day. He and appellant's agent took their meals
together at the hotel, and had frequent conversations at
such times between themselves during the progress of the
arbitration. There is evidence which tends to show that
Millikan appeared to be acting in the matter of the ap-
praisement under the directions and advice of Mathews,

the agent, and at the very beginning of the appraisement he began to endeavor to have the loss appraised at the lowest possible amount, asserting and claiming the "sound loss" sustained by appellee in the matter was only about $300. Millikan seems to have entirely overshadowed Nafius, the other appraiser, and so influenced the umpire that he appears to have readily yielded to his views and contentions. In fact Millikan appears to have acted more like an agent of appellant, in its interest and favor, than as an impartial, unbiased, and unprejudiced arbitrator. He represented the appellant, it appears, in disbursing the money in payment of expenses incident to the arbitration, and directed Nafius to meet him at the Galt House, in Louisville, stating to him that he would give a check for "our half" of the amount due to Nafius for serving as appraiser. In fact, there are circumstances in the case tending to show that Millikan had been engaged by Mathews, in advance of his being appointed as an appraiser, to come to New Albany and act as such in the matter of appellee's loss. He had been previously engaged in serving as an appraiser for insurance companies in arbitrating matters of loss.

Without a further summing up of the evidence, it may be said, in a word, that it appears that the award of damages in question is unjust and unfair. It is shown to be less than one-half of the actual loss sustained by appellee, and it certainly appears from the evidence that it was not fairly and honestly made. The reason why this agent of appellant so strenuously insisted on having Millikan, of Indianapolis—"my man," as he designated him—to serve as an appraiser in preference to some competent and disinterested person either residing in New Albany, a city of about 22,000 inhabitants, or in that vicinity, does not appear to have been satisfactorily explained upon the trial, on the part of appellant; and the lower court may possibly, under the circumstances, have

considered that the purpose of the agent in so insisting upon the appointment of Millikan was of a sinister character. A rule which seems to be reasonable, and one well settled by authorities, is that a party to an arbitration, who by his own acts, either attempts to corrupt or improperly influence one or more of the arbitrators to make an award in his favor, can not be heard to say that such act or acts on his part were ineffectual to accomplish the purpose designed. If the conduct of such party had a tendency to affect improperly the decision of the arbitrator or arbitrators in the matter in issue, it will be held to be sufficient to invalidate the award, without inquiring as to whether the conduct or act in question actually produced any harmful results to the complaining party. *Catlett* v. *Dougherty,* 114 Ill. 568; *Robinson* v. *Shanks,* 118 Ind. 125.

In the case of *Catlett* v. *Dougherty, supra,* the party in whose favor the award was given was shown to have made statements in the absence of the other to one of the arbitrators which was intended to influence his decision; it was held for that reason that the award was invalid and ought to be set aside.

In *Robinson* v. *Shanks, supra,* this court condemned as highly improper the fact that one of the parties to the arbitration therein involved during the progress thereof entertained one of the arbitrators at his own home and had another arbitrator to take a meal at a hotel at such party's expense. This court in that case quoted with approval the following statement of Scholfield, J., in *Catlett* v. *Dougherty, supra:* "It is unimportant whether Sidell was, in point of fact, improperly influenced by the conduct of Dougherty, or not. It is sufficient to authorize the enjoining of the suit at law and the setting aside of the award, that James M. Dougherty—one of the real parties in interest—made a statement to him, in the absence of his adverse party to the arbitration, evidently designed

and having a tendency improperly to affect his decision as an arbitrator. Courts will not enter upon an inquiry of how far such conduct may, in fact, have produced harmful results, but will, at the instance of the party intended to be thus injured, set aside the award. A party attempting, by overt acts, to corrupt or improperly influence such a tribunal to make an award in his favor, is not to be heard to say that he was impotent to accomplish what he sought, and to raise an issue thereupon. *Strong* v. *Strong,* 9 Cush. 574; *Cleland* v. *Hedley,* 9 R. I. 163; *Sisk* v. *Garvey,* 27 Md. 401. See, also, Morse, Arbitration and Award, 534; 2 Story's Equity, §1452a."

. As there is evidence fully to sustain the finding and judgment of the trial court in the case at bar, we can not disturb the result reached below on appellant's claim of insufficiency of the evidence. We have examined all of the alleged errors urged by appellant's counsel for a reversal, but find that they are not sustained. The judgment is therefore affirmed, with five per cent. damages.