ATLAS CONSTRUCTION COMPANY, INC. *v.* INDIANA INSURANCE COMPANY, INC.

[No. 2-573A122. Filed April 17, 1974.]

*Bruce C. Bade, Biddinger & Johnson,* of Marion, for appellant.

*Mark W. Gray, Howard J. DeTrude, Jr., Kightlinger Young Gray & DeTrude,* of Indianapolis, for appellee.

SULLIVAN, P.J.—This appeal involves the trial court's judgment for defendant Indiana Insurance Company, Inc. (insurer) pursuant to Ind. Rules of Procedure, Trial Rule 50 holding as conclusive upon the parties an appraisal award made for the fire loss of plaintiff-appellant (Atlas). The appraisal award was made in keeping with the following provision of a fire insurance policy contract which insured a structure owned by Atlas "to the extent of actual cash value" but not exceeding the cost of repair or replacement:

> "Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value of the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. *The appraisers shall then appraise the loss, stating separately actual cash value, and loss to each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.* Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally." (Emphasis supplied)

Atlas' complaint sought recovery upon the policy of fire insurance issued by insurer in the face amount of $27,500. Atlas alleged the amount of loss to be $30,000 and sought the full face amount of the policy from the insurer. Defendant's answer alleged that pursuant to the policy contract an appraisal of plaintiff's loss had been made which loss was

determined to be $6,661.00. Said amount had been tendered to Atlas and refused. The building had been purchased by Atlas in September, 1968 for $6,750.00. The total destruction by fire took place in 1970 after Atlas had made some modifications to the structure.

In proceeding to trial by jury after having overruled the insurer's Motion to Dismiss and its Motion for Summary Judgment, it was apparent that the court considered the award as binding upon the parties unless the evidence should disclose that it had been made as a result of fraud, mistake or misfeasance. The court's reception of evidence was limited to the latter consideration and we feel properly so.

In its ruling upon the Motion for Judgment and directing the jury to return a verdict for plaintiff for $6,661.00, the court said:

> ". . . the Court is essentially saying that the parties herein are bound by the arbitration award, and, therefore, is sustaining the motion inasmuch as the law states that the plaintiff must plead and prove that the award in effect is not binding by reason of fraud, mistake or misfeasance on the part of the appraisers."

Atlas seeks reversal upon the grounds that

1. The trial court improperly excluded evidence with respect to replacement cost of the building as a factor proper to be considered by the jury in determining the "actual cash value" of the structure.

2. That the appraisal award was defective and should be set aside because

   (a) The award was signed only by the appraiser selected by the insurer, and by the umpire and that the appraiser selected by Atlas was not notified in advance of the time and place of the signing of the award; and

   (b) That the umpire made an independent investigation and appraisal rather than resolve an item by item series of differences between the two appraisers.[1]

---

1. No issue is presented for our determination with respect to plaintiff's entitlement, if any, to a refund of portions of the premium paid for coverage, in light of the actual value of the structure insured.

I

THOUGH TERMS SOMETIMES USED INTERCHANGE-
ABLY, "APPRAISAL" PROCEDURE PURSUANT TO FIRE
INSURANCE CONTRACT DOES NOT CONSTITUTE
"ARBITRATION"

We are not here concerned with an arbitration award as was the case in *Indiana Insurance Co.* v. *Noble* (1970), 148 Ind. App. 297, 265 N.E.2d 419.

In matters of strict appraisal, as here, it is only the amount of the loss which is fixed. Other possible issues such as liability are not determined. As stated in *Hartford Fire Insurance Co.* v. *Jones* (1959), 235 Miss. 37, 108 So.2d 571, 572:

"Appraisement, in particular, is perhaps most often con-
fused with arbitration. While some of the rules of law
that apply to arbitration apply in the same manner to
appraisement, and the terms have at times been used inter-
changeably, there is a plain distinction between them. In
the proper sense of the term, arbitration presupposes the
existence of a dispute or controversy to be tried and de-
termined in a quasi judicial manner, whereas appraisement
is an agreed method of ascertaining value or amount of
damage, stipulated in advance, generally as a mere auxiliary
or incident feature of a contract, with the object of pre-
venting future disputes, rather than of settling present ones.
Liability is not fixed by means of an appraisal; there is only
a finding of value, price, or amount of loss or damage. The
investigation of arbitrators is in the nature of a judicial
inquiry and involves, ordinarily, a hearing and all that is
thereby implied. Appraisers, on the other hand, where it
is not otherwise provided by the agreement, are generally
expected to act upon their own knowledge and investigation,
without notice of hearings, are not required to hear evidence
or to receive the statements of the parties, and are allowed
a wide discretion as to the mode of procedure and sources
of information." *See also* to the same effect: *In re Delmar
Box Co.* (1955), 309 N.Y. 60, 127 N.E.2d 808; 14 Couch on
Insurance, 2d. § 50.5.

We therefore need not consider as relevant to the matter before us the provisions and requirements for notices, hear-
ings, award confirmations, and the like, which are set forth

in IC 1971, 34-4-1-1 *et seq.* (Burns Code Ed.) and in the more recent and perhaps superseding Uniform Arbitration Act, IC 1971, 34-4-2-1 *et seq.* (Burns Code Ed.). *In re Delmar Box Co., supra,* and 14 Couch on Insurance, 2d. § 50.15.

## II

## ABSENT FRAUD, MISTAKE, MISFEASANCE OR OTHER SIMILAR AND PREJUDICIAL DEFECT, APPRAISAL AWARD MADE PURSUANT TO FIRE INSURANCE CONTRACT IS FINAL AND BINDING AS TO AMOUNT OF LOSS

The Courts of Indiana will not hesitate to set aside an appraisal award if it is tainted with fraud, collusion or partiality for appraisers, though selected by the respective parties, "must act free from bias, partiality, or prejudice in favor of either of the parties." *Insurance Co. of North America* v. *Hegewald* (1903), 161 Ind. 631, 640, 66 N.E. 902. As required by the policy contract itself, the appraisers must be "disinterested." When, however, the award is uninfected with such unfairness or injustice, it is not to be set aside and replaced by the subjective judgment of a reviewing court.

As aptly stated in *Lakewood Manufacturing Co.* v. *Home Ins. Co. of N.Y.* (1970 6th Cir.), 422 F.2d 796, 798 (cert. den. 400 U.S. 827, 91 S.Ct. 53) :

> "Generally, a court will not interfere with an appraisal award but, to the contrary, will indulge in every reasonable presumption to sustain it in the absence of fraud, mistake, or misfeasance. A court will not substitute its judgment for that of the appraisers or set aside an award for inadequacy or excessiveness unless it is so palpably wrong as to indicate corruption or bias on the part of the appraisers."

Thus, one who voluntarily submits to "arbitration" of the amount due upon a fire insurance policy, except in exceptional circumstances, is bound by the award which results from such "arbitration" or appraisal. *See Indiana Insurance Co.* v. *Brehm* (1883), 88 Ind. 578. Al-

though the *Brehm* case concerned a specific stipulation that such award was to be binding and conclusive as to the amount of loss (*see also Manchester Fire Assurance Co.* v. *Koerner* (1895), 13 Ind. App. 372, 40 N.E. 1110), the language used in the policy here has been interpreted to be identical in its import of finality to that used in *Brehm*. *Schreiber* v. *Pacific Coast Fire Insurance Co.* (1950), 195 Md. 639, 75 A.2d 108; 14 Couch on Insurance, 2d §§ 50:54 and 50:228.

## (A) EVIDENCE OF REPLACEMENT COST AS MEASURE OF ACTUAL CASH VALUE WAS PROPERLY EXCLUDED

With respect to its first contention, Atlas asserts that the insurer is bound to pay "actual cash value" and that since that phrase is not defined by the policy, Atlas was entitled to submit evidence of replacement value as bearing upon its actual cash value loss. This argument presupposes that the matter was proper for a determination by a jury or court and that the appraisal award is not binding upon Atlas.

The specific complaint by Atlas is that evidence of replacement value is a possible alternative factor which a jury might properly consider in determining the "actual cash value" of the destroyed property. The concession by Atlas that replacement value is but one of several appraisal methods by which value may be fixed is in itself fatal to its argument. As earlier pointed out, an appraisal award will not be disturbed unless manifestly unjust or is infected with fraud, collusion, misfeasance or the like. Quite clearly, the mere fact that the umpire and one appraiser utilized a market value appraisal approach, rather than a replacement cost method, does not provide basis for setting aside the appraisal award.

Atlas seeks to have us adopt, or at least sanction, a method of valuation or appraisal called the "broad evidence rule." See 15 Couch on Insurance, 2d § 54:137. Without regard to the merits of such a rule or to the wisdom of abandoning fair market value or replacement value as appropriate appraisal methods, it is unavailing to

Atlas here. Had the appraisal award here been premised upon some method other than fair market value, such as a "broad evidence rule", we might well acknowledge such as an appropriate method in Indiana. We are not permitted to set aside an award, however, merely because an arguably permissible method was not used. To permit relitigation of the matter of actual cash value would be to subvert the very purpose of appraisals in such cases. *Schreiber* v. *Pacific Coast Fire Insurance Co., supra; Patriotic Order, S.A.H.A.* v. *Hartford Fire Insurance Co.* (1931), 305 Pa. 107, 157 A. 259.

We therefore hold that the trial court properly excluded the proferred evidence of Atlas with respect to replacement cost.[2]

### III

Atlas does not allege fraud, collusion, bias, prejudice or partiality upon the part of either or both of those who signed the award. Its sole complaints are that the appraiser selected by Atlas was not present at the meeting between the other two when the award was signed by both and that the "Umpire" did not merely resolve differences between the appraisers but rather made an independent appraisal which formed the basis of the award.

At the outset of our discussion of these contentions, it should be noted that whether a person is truly an "umpire" or an additional appraiser depends not upon what he is called but rather upon his powers and duties under the agreement. Where, as here, the agreement provides for two appraisers with power to select a third person

---

2. We might point out in any event that Indiana case law has equated actual cash value with fair market value. *Wea Township of Tippecanoe County* v. *Cloyd* (1910), 46 Ind. App. 49, 91 N.E. 959. Other authority more recent and to the point has held that "actual cash value" as used in a fire insurance policy is synonomous with "fair market value" (the valuation method upon which the award herein is apparently based) and is not consistent with "replacement cost." *Jefferson Insurance Co. of New York* v. *Superior Court of Alameda County* (1970), 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880. Thus, even without regard to the finality of the appraisal award, we might well hold under the circumstances that the proferred evidence of Atlas as to replacement cost was properly excluded.

to resolve differences and that in the event of disagreement an award by a majority shall be final, the third person is an additional, if conditional, appraiser and not an umpire. 14 Couch on Insurance, 2d § 50:125.

In *Cones* v. *Vanosdol* (1853), 4 Ind. 248, 251, our Supreme Court dealt with true arbitration but apropos of the matter before us noted that when as here, the agreement contemplates that the "umpire" may act together with one of two appraisers so as to render an award by the majority:

> "The language is express, that a majority should make the award, and there could be no majority if but two were to sit. The term umpire was evidently used without a very definite conception of its legal meaning; but the mere improper use of a term cannot be permitted to control the construction of an agreement, when the meaning of the parties is palpable." *See also Grand Rapids & Ind. Ry. Co.* v. *Jaqua* (1917), 66 Ind. App. 113 at 121, 125, 115 N.E. 73.

## (A) NEITHER FAILURE OF NOTICE, NOR ABSENCE OF ONE APPRAISER FROM MEETING AT WHICH OTHER APPRAISER AND "UMPIRE" SIGN AWARD, OF ITSELF, CAUSE FOR SETTING AWARD ASIDE

With respect to the contention of Atlas that notice to Wells, the appraiser who did not participate in the award, was essential to the validity thereof, it is not alleged nor is there any hint that the "umpire" and the appraiser who concurred in the award were in collusion. There is no hint that they agreed in advance to premise the award upon the separate and independent appraisal of the "umpire". There is no hint that either the appraiser or the "umpire" was subjected to undue or extraneous influence in the appraisal process nor that the award was based other than upon an impartial and objective appraisal utilizing recognized appraisal methods in a resolution of the difference between appraisers McDaniel and Wells.

Notwithstanding protestations by Atlas to the contrary, there is credible evidence of record that prior to December 24, 1970, the date upon which Mr. Hutchinson, the "umpire",

and McDaniel (the appraiser selected by the insurer) met and signed the award, the three individuals (both appraisers and Hutchinson) met on two occasions. The first such meeting, according to the testimony of Mr. Hutchinson, took place on November 11, at which time, according to McDaniel, the two appraisers discussed their respective prior "cash value" evaluations as well as the appraisal methods and factors which were utilized and considered. Hutchinson further testified that all three met again on December 14 after Hutchinson had made his own appraisal of the premises.

The evaluative and judgmental aspects of the appraisal process had been completed prior to the formality of December 24, 1970. Once the third appraiser became duly involved in the process by reason of the obviously irreconcilable difference of opinion between the two original appraisers, it became his function to resolve that difference so as to permit entry of an award. In making such determination, he had only to obtain the impartial concurrence of one or the other of the original appraisers in order to complete the process. Hutchinson, the third appraiser, made his appraisal, in which McDaniel concurred. This appraisal became the award when signed by both. Notice to or the presence of Wells, the other appraiser at the signing of the award, would have served no useful purpose. Had he been present, he could have done one of two things—concur or append his dissent to the award—both unnecessary.

The signing of the award by the third appraiser and one of the original appraisers, fully met the conditions and requirements of the law and the appraisal agreement between the parties.

### (B) SEPARATE APPRAISAL IS APPROPRIATE METHOD OF RESOLVING DIFFERENCE BETWEEN TWO ORIGINAL APPRAISERS

We have hereinbefore noted that the "umpire" is in actuality a third appraiser, who together with at least one of the two

original appraisers may effect a binding award, and as stated in 14 Couch on Insurance 2d § 50:6:

". . . appraisers are generally expected to act on their own skill and knowledge. . . ."

The function of the third appraiser in resolving the difference between the two original appraisers quite properly, then, contemplates the exercise of independent judgment on his part. To hold otherwise under circumstances as here presented would be to encourage, if not require, "quotient" appraisal awards. Such "quotient" awards are as strongly suspect in the law as are "quotient" jury verdicts. See Anno. 20 ALR2d 958.

The fact that the independent appraisal of the third appraiser became, with the concurrence of one of the original appraisers, the final award is not, under the facts of this case, cause for reversal.

(C) CONTRACT REQUIREMENT FOR "ITEM BY ITEM" SUBMISSION DIFFERENCES NOT APPLICABLE WHEN FIRE LOSS IS LIMITED TO SINGLE STRUCTURE, TOTALLY DESTROYED

Atlas' contention that the award was defective in that the appraisers did not submit separate and item by item the differences reflected by their respective appraisals is without merit in the case before us. The loss appraised was a total loss—total destruction of a building. The difference was obviously then a difference as to the totality—as to the value of the entire building. There is no basis in logic, law or practicality to submit differences with respect to various component parts of the structure, e.g., this wall or that timber. The difference between the appraisers therefore properly reflected but one item—the actual cash value of the structure. *Phoenix Assurance Co. of New York v. Singer* (1963 E.D. Mo.), 221 F.Supp. 890, affirmed 331 F.2d 10.

## CONCLUSION

The procedures required and contemplated by the law of Indiana and by the insurance contract were followed. The two original appraisers met. They made their respective appraisals. They disagreed as to the "actual cash value" of the insured structure. They met with the third appraiser selected by them. They submitted this basic disagreement to him. The third appraiser reconciled this difference by making his own appraisal which thereafter received the concurrence of one of the two original appraisers. The third appraiser and the concurring appraiser signed the award. This award was proper and was binding upon the parties as to the insured fire loss sustained by Atlas. The award was not tainted by fraud, mistake or misfeasance and was therefore appropriately made the basis for the judgment on the evidence in the court below.

Judgment affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 309 N.E.2d 810.