**FDL, INCORPORATED,**
Plaintiff–Appellee,

v.

**CINCINNATI INSURANCE COMPANY,**
Defendant–Appellant.

No. 97–1607.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1997.

Decided Feb. 2, 1998.

Rehearing Denied March 11, 1998.

Gayle A. Reindl, James E. Hughes (argued), Sommer & Barnard, Indianapolis, IN, for Plaintiff–Appellee.

Michael E. Brown (argued), Kightlinger & Gray, Indianapolis, IN, for Defendant–Appellant.

Before CUMMINGS, HARLINGTON WOOD, JR., and COFFEY, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

FDL is an Indiana corporation in the business of manufacturing tables and chairs. On October 4, 1994, a five-alarm fire destroyed the FDL facility located at 920 West Washington Street, Alexandria, Indiana, and virtually all of FDL's property located at the site. FDL's commercial insurance was issued by The Cincinnati Insurance Company ("Cincinnati"). Policy number CCP 502 10 21 AWR (the "Policy") covered FDL's operations in Alexandria and provided coverage for FDL's fire losses.

Following the fire, FDL submitted a written claim for $3,077,874.00 to Cincinnati. In determining the amount of this claim, FDL valued its destroyed inventory at market price for completed pieces and at a proportion of market price for partially-assembled items. Cincinnati asserted that FDL was only entitled to recover the cost of remanufacturing its lost inventory, rather than the market price. Cincinnati paid FDL $2,173,-368 for undisputed portions of the claim.

Pursuant to the Policy, the parties began an appraisal process to resolve the dispute over the valuation of the inventory. Each party selected an appraiser, and these appraisers selected an umpire. As the appraisal process began, FDL filed a complaint for declaratory judgment in the district court. In this complaint, FDL contended that it was entitled to recover the market price for its unsold completed inventory and an amount

proportional to market price for its partially-assembled inventory.

On January 24, 1996, FDL moved for summary judgment. On March 6, 1996, the umpire issued the results of the appraisal, setting the total value of FDL's lost inventory at $1,773,688. This amount includes the cost to remanufacture the inventory, plus $118,091 to reflect additional value on inventory sold but not yet delivered. On May 13, 1996, FDL requested permission to file a supplemental complaint in which it asked the court to set aside the arbitration award. The court allowed the filing of the supplemental complaint.

On February 11, 1997, the court granted FDL's motion for summary judgment and denied Cincinnati's cross-motion for summary judgment. Cincinnati filed a timely appeal.

## I. BACKGROUND

The material facts are undisputed. Cincinnati issued the Policy to FDL effective September 1, 1994. In general, the Policy provides:

7. Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

(a) At "Actual Cash Value" as of the time of loss or damage....

"Actual Cash Value" is defined elsewhere in the Policy as replacement cost less a deduction reflecting "depreciation, age, condition and possibly also obsolescence." For an additional premium, FDL also received Replacement Cost Coverage, including coverage for "Stock." Under the Replacement Cost Coverage option, Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in valuation. "Stock" is defined as "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping."

The Policy also contains an appraisal provision which was designed to settle any disagreement between the parties as to the value of the property or the amount of the loss. This provision provides:

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding....

■ The district court held that the term "replacement cost" was not ambiguous and that, as used in the policy, it meant the sum of money that would allow FDL to replace each item lost with an equivalent item. The district court, however, found ambiguity in the term "replace" which it maintained could mean either to replace by remanufacturing or to replace by purchasing equivalent items in the market place. According to the district court, this ambiguity created a need for contract interpretation which is the role of the court, not of the appraisers. Under Indiana state law, ambiguities in an insurance contract are construed against the insurer as drafter. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). Therefore, the magistrate judge granted summary judgment in favor of FDL, holding that under this contract replacement cost must be defined as market price. The court went on to state that the appropriate value for market price was FDL's selling price for the lost items, which would allow FDL to recover anticipated profits on the lost items. The magistrate judge set aside the appraisal award and ordered that on reappraisal, the appraisers should utilize the selling price definition of replacement value. The magistrate's memorandum decision thoughtfully analyzes the issue, but we must disagree.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*. *Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is appropri-

ate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ As a preliminary matter, we must address Cincinnati's contention that the district court was precluded from interfering with the contractually agreed upon appraisal award absent a showing that the award was manifestly unjust or infected with fraud, collusion, misfeasance or the like. In support of this argument, Cincinnati cites *Atlas Construction Co., Inc. v. Indiana Ins. Co. Inc.,* 160 Ind.App. 33, 309 N.E.2d 810 (1974). The district court distinguished *Atlas,* stating that the issue in *Atlas* was whether the amount of loss determined by the appraisers was correct. However, in *Atlas,* the plaintiff based its contention of error on a dispute as to the appropriate method of computing a valuation term. Therefore, as discussed below, *Atlas* is analogous to the present case in that each suit is actually a dispute over policy terms relating to valuation.

In *Atlas,* the insured was entitled to recover "actual cash value" under its fire insurance policy. "Actual cash value" was not defined in the policy. The insured asserted that actual cash value should be determined using replacement cost while the insurer advocated a market value approach. *Id.,* 309 N.E.2d at 814. The policy had an appraisal clause, similar to the one in the FDL policy, and, since the parties could not agree on the valuation, they entered into the appraisal process. *Id.* at 812. The umpire agreed with the insurer's appraiser and the final appraisal award was based on the market value approach. *Id.* at 814. The insured filed suit to set aside the award. The trial court held that the contractually agreed upon appraisal award was binding on the parties and refused to consider evidence regarding whether or not it was correct. The appellate court affirmed this decision. *Id.* at 812.

Similarly, in the present case, the parties dispute the appropriate method for determining a valuation term. It is undisputed that FDL is entitled to recover "replacement cost" under the Policy. FDL asserts that replacement cost should be determined using market price, while Cincinnati advocates the use of cost to remanufacture. This situations parallels *Atlas.* While FDL argues that upholding the appraisal in this case would strip the court of its authority to interpret contractual provisions, such a holding only serves to reaffirm that which the Indiana courts have already allowed in *Atlas.* Additionally, although the district court gave significant weight to the fact that FDL filed its claim before the appraisers issued the award, it ignored the fact that FDL's supplemental complaint expressly asked the court to set aside the appraisal award. It is also important to note that the parties had already begun the appraisal process at the time FDL filed its original complaint. Although Indiana Court of Appeals decisions are not necessarily binding on this court, we find *Atlas* to be persuasive.

■ Despite the fact that FDL attempts to short-circuit the appraisal process by this lawsuit, under *Atlas,* a party who voluntarily submits to appraisal to determine the amount due under a fire insurance policy is bound by the appraisal award, absent exceptional circumstances. *Atlas,* 309 N.E.2d at 814. To hold otherwise would frustrate the very purpose of appraisal clauses in cases such as this. Exceptional circumstances include manifest injustice, fraud, collusion, misfeasance or the like. *Id.* FDL fails to allege any basis for setting aside the appraisal under this standard. Therefore, the appraisal award is binding, and the district court erred in addressing FDL's additional arguments.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's entry of judgment in favor of FDL on the replacement cost issue. Additionally, we REVERSE the district court's order denying Cincinnati's cross-motion for summary judgment and REMAND the case to the district court with directions to enter summary judgment in favor of Cincinnati on the replacement cost issue.