**JUPITER ALUMINUM CORPORATION,**
Plaintiff,

v.

**The HOME INSURANCE COMPANY and The Hartford Steam Boiler Inspection and Insurance Company, Defendants.**

**No. 96 C 3060.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 16, 1999.

Herbert I. Rothbart, Chicago, IL, Robert P. Keno, Highland, IL, for Jupiter Aluminum Corp., Plaintiff.

Thomas Bernard Keegan, Edward William Gleason, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Home Ins. Co. and Hartford Steam Boiler Inspection and Ins. Co., Defendants.

## MEMORANDUM OPINION
## AND ORDER

GETTLEMAN, District Judge.

On April 22, 1996, plaintiff Jupiter Aluminum Corporation sued defendant The Home Insurance Company ("Home") and Hartford Steam Boiler Inspection and Insurance Company ("Hartford") in the Circuit Court of Cook County, Illinois, pursuant to § 112 of the Uniform Arbitration Act, 710 ILCS 5/12(b), seeking a declaratory judgment vacating an appraisal award determining an amount of loss. Plaintiff alleges that the award should be set aside because plaintiff was operating under the belief that the procedure leading to the appraiser's determination of the loss was nonbinding, and even if binding, the appraisal umpire exceeded his authority, was not neutral, wholly ignored the evidence and applicable law and was arbitrary and capricious in determining the amount of loss.

Defendants removed the case to this court on May 22, 1996, pursuant to 26 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a). Plaintiff filed an amended complaint on January 21, 1998, adding a count for damages. On September 24, 1998, the court granted defendant leave to file a counterclaim for unjust enrichment, seeking return of an overpayment to plaintiff. Defendants have now moved for summary judgment on plaintiff's complaint and their counterclaim. For the reasons set forth below, defendants' motions are granted.

### Facts[1]

Plaintiff operates an aluminum mini-mill at a facility located at 1745 165th Street, Hammond, Indiana (the "Plant"). Plaintiff had an insurance policy issued by defendant Home and reinsured by defendant Hartford providing first-party property, boiler, machine and business interruption coverage for the Plant and another property located in Hammond. On March 7, 1993, plaintiff suffered a loss at the Plant when a drive motor for one of the reducing stands on its tandem mill failed. The motor was replaced and the second stand of the tandem mill was returned to service on May 6, 1993. On that date plaintiff, through its insurance broker, submitted a claim indicating the Probable Amount of Entire Loss was $100,000 plus/including business interruption. Hartford investigated and on June 22, 1993, advised plaintiff that the motor failure was a covered occurrence and requested an itemized statement of plaintiff's claim. Hartford agreed to pay the property damage portion of the claim, but the parties could not agree on the amount of business interruption loss. Both parties hired accountants/adjusters who also could not agree.

On November 2, 1993, defendant paid plaintiff an advance of $100,000 as partial payment for the loss. The partial payment was to apply to both the property damage and business interruption portions of the claim. Thereafter, plaintiff submitted a business interruption claim of $550,803. Hartford determined that after all deductibles, the property damage portion

1. The facts underlying this case are largely undisputed. Pursuant to Local Rule 12, defendant filed a Rule 12M statement of material facts not in dispute. Under the rule, plaintiff was required to file a Rule 12N response, which must include "a response to each numbered paragraph in the moving party's statement, including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied on." Instead of following this simple rule, plaintiff filed a document entitled "Plaintiff's Rule 12(M) Statement of Material facts in Opposition to Defendants' Motion for Summary Judgment." This misnomer is not merely technical, for plaintiff's submission simply listed the paragraphs of defendants' submission that plaintiff found acceptable and unacceptable, with not a single citation to the record. Plaintiff then listed portions of individual depositions it believed to be material, some with citations to page numbers, some without. Pursuant to Rule 12, the court deems all of the facts plaintiff disputes as admitted for purposes of this motion. See *Knox v. McGinnis*, 998 F.2d 1405, 1408 n. 8 (7th Cir.1993). Most of these "facts," however, relate to defendants' alternate theories and are not relevant to the court's decision.

of the loss was $12,270 and that the business interruption portion was $95,358. In February 1994, plaintiff advised defendants that its business interruption loss exceeded $1.3 million but offered to accept $665,000.

On July 19, 1994, plaintiff submitted a proof of claim in the amount of $528,113. Pursuant to a provision in the policy plaintiff demanded a formal appraisal. Defendants agreed, and the parties designated appraisers, who then selected an umpire and proceeded with the appraisal process. Each side's designated appraiser submitted a report to the umpire. The sole issue to be decided was the lost production and sales between March 8 and May 6, 1993.

On January 9, 1996, the designated appraisers met with the umpire. The umpire then issued an award indicating the amount of lost sales at 739,059 pounds, which corresponded to $66,105 total loss, of which $53,835 represented business interruption loss. Defendants' designated appraiser signed the award.

### *Discussion*

"The construction of an insurance policy and a determination of rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *West Suburban Bank of Darien v. Badger Mutual Insurance Co.,* 141 F.3d 720, 723 (7th Cir.1998) (quoting *Hurst–Rosche Eng.'s, Inc. v. Commercial Union Ins.,* 51 F.3d 1336, 1342 (7th Cir.1995)). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

■ To construe the parties' rights and obligations under the contract, the court must first determine which state's laws govern interpretation of the insurance policy in question. A federal court exercising diversity jurisdiction must consult the choice of law rules of the state in which

it sits to determine which state's substantive law applies. *West Suburban,* 141 F.3d at 724 (citing *GATX Leasing Corp. v. National Union Fire Insurance Co.,* 64 F.3d 1112, 1114 (7th Cir.1995)). Illinois applies a most significant contacts test to determine choice of law in contract cases. Id. As stated by the Illinois Supreme Court in *Lapham–Hickey Steel Corp. v. Protection Mutual Insurance Co.,* 166 Ill.2d 520, 526–27, 211 Ill.Dec. 459, 655 N.E.2d 842 (1995):

> Absent an express choice of law, insurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place having a rational relationship to the general contract.

■ The Seventh Circuit has held that in areas involving fire insurance contracts, the law of the state in which the insured property principally lies usually governs. *West Suburban,* 141 F.3d at 724; *GATX,* 64 F.3d at 1115. Because the insurance contract at issue is similar to a fire insurance contract, and because both insured properties are located in Hammond, the court concludes that Indiana law applies to the instant dispute.

The policy in question contains an appraisal provision which was designed to settle any disagreement as to the amount of loss. The provision provides:

> If the insured and the Company fail to agree as to the amount of the loss, each shall, upon written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent umpire, and failing for fifteen (15) days to agree on such umpire, then on request of the insured or the Company, such umpire shall be selected by a judge of a court of record in the county and state in which

such appraisal is pending. The appraisers shall then appraise the loss in accordance with the insurance conditions, stating separately the amount of loss, and failing to agree, shall submit their differences to the umpire. An award in writing of any two (2) shall determine the amount of loss. The insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and the umpire. The Company shall not be held to have voided its rights by any act relating to appraisal.

There is no dispute that the parties followed the provisions of the policy and that the umpire and defendants' appraiser issued an award in writing. The question is whether the provision was intended to be binding. Plaintiff argues that it never believed the process to be binding arbitration and that the last line of the provision, which indicates that defendant shall not be held to have waived its rights by any act relating to appraisal, definitively indicates that the provision was not intended to be binding, or at least demonstrates ambiguity which should be construed against defendant.

Defendants, on the other hand, point to the phrase "an award in writing of any two (2) shall determine the amount of the loss," as an indication of the finality of the provision. Therefore, under Indiana law, defendants argue that having elected to proceed with the appraisal process, plaintiff is bound by its outcome. *FDL., Inc. v. Cincinnati Ins. Co.*, 135 F.3d 503, 505 (7th Cir.1998) (citing *Atlas Construction Co., Inc. v. Indiana Insurance Co., Inc.*, 160 Ind.App. 33, 41, 309 N.E.2d 810 (1974)).

■ The court first notes that Indiana does not consider an appraisal provision to constitute arbitration, because only the amount of loss, not liability, is determined. As stated in *Atlas*, 160 Ind. App. at 37, 309 N.E.2d 810 (quoting *Hartford Fire Insurance Co. v. Jones*, 235 Miss. 37, 108 So.2d 571 Southern 2d 571, 572 (1959)):

Appraisement, in particular, is perhaps most often confused with arbitration. While some of the rules of law that apply to arbitration apply in the same manner to appraisement, and the terms have at times been used interchangeably, there is a plain distinction between them. In the proper sense of the term, arbitration presupposes the existence of a dispute or controversy to be tried and determined in a quasi judicial manner, whereas appraisement is an agreed method of ascertaining value or amount of damage, stipulated in advance, generally as a mere auxiliary or incident feature of a contract, with the object of preventing future disputes, rather than on settling presenting ones. Liability is not fixed by means of an appraisal; there is only a finding of value, price, or amount of loss or damage. The investigation of arbitrators is in the nature of a judicial inquiry and involves, ordinarily, a hearing and all that is thereby implied. Appraisers, on the other hand, whereas not otherwise provided by the agreement, are generally expected to act upon their own knowledge and investigation, without notice of hearings, are not required to hear evidence or to receive the statements of the parties, and are allowed a wide discretion as to the mode of procedure and sources of information.

■ Because the instant case involves appraisement, not arbitration, plaintiff's claim under the Uniform Arbitration Act must fail. *Id.* at 38, 108 So.2d 571. Therefore, plaintiff can prevail only by establishing that the appraisal award is non-binding or, for some other reason, should not be upheld. In *FDL*, 135 F.3d at 505, the Seventh Circuit held that under Indiana law, a party who voluntarily submits to appraisal to determine the amount due under an insurance policy is bound by the appraisal award, absent exceptional circumstances. To hold otherwise would frustrate the very purpose of the appraisal clause. Although the appraisal provision in *FDL* provided that "a decision agreed to by any two appraisers will be binding ...,"

the court did not focus on the language of the provision, but rather on the purpose of such provisions. Indeed, in reaching its conclusion, the *FDL* court relied on *Atlas*, in which the appraisal provision contained no such language.

In *Atlas*, 160 Ind.App. at 38, 309 N.E.2d 810, the court set forth the standards for judicial review of appraisal awards. "The courts of Indiana will not hesitate to set aside an appraisal award if it is tainted with fraud, collusion or partiality for appraisers, though selected by the respective parties, must act free from bias, partiality, or prejudice in favor of either of the parties.... When, however, the award is uninfected with such unfairness or injustice, it is not to be set aside and replaced by subjective judgment of a reviewing court." [2]

Plaintiff argues that the appraisal award is patently unfair and manifestly unjust, but has no objective evidence to support this claim. Plaintiff's argument boils down to the fact that the umpire came to the meeting of the appraisers with three different loss scenarios and allowed the parties [3] to pick one. Plaintiff argues that there was no meaningful dialogue between the appraisers, but nothing in *FDL* or *Atlas* suggests that the umpire need justify his result to the other appraisers. Indeed, *Atlas* specifically holds that a separate appraisal is an appropriate method of resolving differences between two original appraisers, and that the umpire is expected to exercise independent judgment and to act on his own skill and knowledge. *Atlas*, 160 Ind.App. at 42, 309 N.E.2d 810. Because plaintiff has no evidence that the

umpire was biased or partial, the mere fact that he had already reached a decision before he met with the other two designated appraisers is insufficient to overturn the award. Accordingly, defendants' motion for summary judgment of plaintiff's complaint and their counterclaim are granted.

### Conclusion

For the reasons set forth above, defendants' motions for summary judgment are granted, enforcing the umpire's award. Judgment is entered in favor of defendants and against plaintiff in the amount of $33,895.[4]

---

**2.** Even if Illinois law applies, the result is the same. "As long as appraisers act honestly and in good faith they have a wide discretion as to the methods of procedure and sources of information. Their conclusions, in the absence of fraud or mistake, will be binding upon the parties." *Sebree v. Bd. of Education*, 254 Ill. 438, 446, 98 N.E. 931 (1912); *General Casualty Co. v. Tracer Indus., Inc.*, 285 Ill.App.3d 418, 220 Ill.Dec. 930, 674 N.E.2d 473 (4th Dist.1996).

**3.** Because the umpire's calculations were lower than that of each party's designated appraiser, the umpire essentially allowed defendants' appraiser to pick. The fact that the umpire's calculations were lower than that of the parties, and that defendants' appraiser picked the highest of the umpire's calculations, in no way suggests any bias on the umpire's part.

**4.** The $33,895 represents the difference between the $100,000 paid by defendant to plaintiff, and the $66,105 appraisal award.