2 Ill. App.3d 66 (1971)
275 N.E.2d 724
A.S.S. WRECKING CO., INC., Plaintiff-Counterdefendant-Appellee,
v.
GUARANTY BANK & TRUST CO., as Trustee under Trust No. 11013, et al., Defendants-Counterplaintiffs-Appellants.
No. 54205.
Illinois Appellate Court  First District.
October 12, 1971.
*67 *68 Thomas W. McNamara, Clarold L. Britton, and Arthur M. Martin, of Chicago, (Jenner & Block, of counsel,) for appellants.
Marvin Patrick Cohen, and Jesse H. Brown, of Chicago, for appellee.
Reversed and remanded.
Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:
This is an appeal from a judgment that rejected affirmative defenses, adjudicated counterclaims and ordered foreclosure and sale of two parcels of real estate. The issues arise out of a controversy concerning contracts to demolish two slum buildings.
On February 18, 1963, Richard A. Keefe was appointed receiver of two parcels of real estate, a four-story building at 938-944 North Wells and a five-story building at 1001-1005 North Wells, Chicago. In 1964, Keefe was ordered to demolish the buildings. Accordingly, Keefe and plaintiff entered into two contracts to wreck each building "[d]own to grade level, leaving only solid debris, and removing all burnable materials." The costs for 938-944 North Wells were $8,000; those for 1001-1005 North Wells were $10,775, later increased to $12,540.
On May 14, 1965, plaintiff filed intervening petitions and obtained two orders in which the trial court found that the two buildings had been demolished. Keefe, as receiver, was ordered to execute two trust deeds, one to secure receiver's certificates in the aggregate amount of $8,000 to pay for demolition costs of 938-944 North Wells. The other to secure receiver's certificates in the aggregate amount of $15,775 to pay for the demolition costs of 1001-1005 North Wells. Both orders were "[e]ntered under and by virtue of the authority of Sections 11-31.1 and 11-32.2 [sic] of Chapter 24 of the Illinois Municipal Code in connection with dangerous conditions on [sic] the building on the premises in question, * * *."[1]
On May 21 and June 29, 1965, Keefe, in two trust deeds, "[n]ot individually but as Receiver for the following described real estate, * * *" conveyed and warranted by legal description 938-944 and *69 1001-1005 North Wells Street in Chicago. The two trust deeds were recorded in the offices of the Recorder of Deeds of Cook County. Each document had stapled to it a typewritten statement that "[t]he Mortgagor has issued the Principal Promissory Notes hereinafter described and intends to transfer them, for good and valuable consideration relating to the demolition and other services performed * * *" on the described real estate.
The receiver's certificates were not paid. On August 23, 1967, using the short form provided by statute, plaintiff filed two complaints to foreclose the trust deeds. Keefe was described at the mortgagor. It was alleged that each parcel of real estate was conveyed in fee simple and plaintiff prayed for a foreclosure of each trust deed. Attached to each complaint, as exhibits, were the trust deed and the receiver's certificates. In the complaint concerning 938-944 North Wells, defendant Guaranty Bank and Trust Co., as Trustee under Trust No. 11013 was named defendant. In the complaint concerning 1001-1005 North Wells, National Boulevard Bank of Chicago, as Trustee under Trust No. 1613 was named defendant. Richard Keefe, receiver and Chicago Title and Trust Company, the trustee in each trust deed, were named defendants in each complaint. They were defaulted for failure to appear and answer.
Guaranty and National Boulevard appeared in their respective suit. They filed an answer which included two affirmative defenses and a counterclaim. As their first affirmative defense, Guaranty and National Boulevard alleged that plaintiff's cause of action accrued on August 5, 1965, when there was default in payment of the receiver's certificates.[2] Both alleged that because plaintiff's action as to each of them was not commenced until August 23, 1967, the suits were barred by Ill. Rev. Stat. 1965, ch. 24, par. 11-31-2 "[w]hich provides that actions to foreclose such a trust deed must be commenced within two years after the date of default." Each answer contained a second affirmative defense which alleged that plaintiff breached its contract of demolition because "[i]t failed to fill the property with solid fill to grade level. To the contrary, plaintiff filled the property with unfit, combustible materials in violation of the contract." In addition to the answer and affirmative defenses, Guaranty and National Boulevard each filed a counterclaim in which it was alleged that there were breaches of the demolition contract by the plaintiff and prayed for damages, Guaranty as to 938-944 North Wells, $10,000; National Boulevard, as to 1001-1005 North Wells, $8,000.
*70 Prior to trial, plaintiff moved to strike the first affirmative defense and the counterclaims. The motion to strike was allowed as to the first affirmative defense and denied as to the counterclaims. Defendants were granted leave to amend their counterclaim. The complaints were consolidated for trial. The court then heard evidence on the counterclaims.
To support their allegations that plaintiff breached the demolition contracts, defendants called four witnesses: a photographer, the president of a building wrecking company, a project engineer for a soil testing service and Keefe, the receiver. 43 exhibits were included in their proof. In addition, they requested, and the trial court took judicial notice of section 76-6.4 of the Revised Building Ordinance of the City of Chicago which provided that "[o]n completion of demolition, the site shall be filled where necessary with clean soil, cinders or other inorganic material and graded to a level not lower than nor more than twelve inches above the level of sidewalks, alleys, or adjoining property with proper allowance for settlement."
Keefe testified that after he entered into the demolition contracts, and while the work was in progress, he visited the sites but did not see anything unusual. After he issued the receiver's certificates and delivered the trust deeds to plaintiff, problems arose with the fill materials that had been used. For example, a car parked on one of the lots sank into the ground on its axle, requiring a tow truck to get it out. In the spring or summer of 1966, portions of the sidewalk of 1001-1005 North Wells collapsed. Sidewalk cave-ins also occurred at 938-944 North Wells. The City of Chicago filled and repaved the sidewalks. Later, in the spring and summer of 1967, cinders had to be brought in to fill the "cavities" and "voids" which had occurred on the two properties. Keefe estimated that wood was approximately 25 to 50% of the fill which plaintiff used to grade and level the two properties. Keefe said he hired a soil testing firm to analyze the fill which plaintiff had used.
The supervising project engineer of the soil testing firm testified that two borings were made on each property. On 1001-1005 North Wells the quantity of wood in the fill ranged from none to 50%. On 938-44 North Wells, wood in the fill ranged from none to 35%. This witness testified that wood is an improper fill material because it lacks compactability, it is subject to decay, causes settlement of the filled land, requiring reexcavation before any building of substance can be constructed on a site with wood as fill material. The president of the building wrecking company testified that he inspected the lots at 938-944 and 1001-1005 North Wells after plaintiff completed the demolitions, grading, leveling and filling. He estimated that the cost of reexcavating and re-filling the properties "[w]ould be in the neighborhood between 15 to $20,000." Of defendant's *71 exhibits, 10 were photographs of the two lots showing the fill material that had been used.
Plaintiff called three witnesses: an administrative assistant in the trust department of National Boulevard Bank, the building inspector of the City of Chicago who approved the demolitions and Richard Keefe, called as an adverse witness. The trust department administrative assistant testified concerning trust documents. Keefe explained why payments on the receiver's certificates were discontinued. He said, "There were two substantial reasons: One, we found difficulty with the wood, was part of the reason; the other part of the reason was that he entered into a, sort of a general agreement with some of the principals of A.S.S. Wrecking in the formulation of a dump company * * *." The building inspector testified that while demolition of the buildings on 938-944 and 1001-1005 North Wells was in progress, he visited the properties but saw no wood put in as fill material. Fifteen exhibits were offered by plaintiff and received in evidence.
After hearing the witnesses and receiving the exhibits, the trial court rejected the affirmative defenses, found against defendant on the counterclaims and ordered foreclosure and sale of the two parcels of real estate.[3] In this appeal defendants present three issues.
1. Whether the trial court erred in striking defendants' first affirmative defense which alleged that each of plaintiff's complaints to foreclose the trust deeds were barred by the statute of limitations which requires that a suit to foreclose the lien of a receiver's certificate "[s]hall be commenced within two years after the date of default."
2. Whether the trial court erred in ordering foreclosure of the trust deeds.
3. Whether the trial court erred in finding in favor of plaintiff and against defendants on the counterclaims which alleged breaches of the demolition contracts.
Concerning the first issue, defendants contend that plaintiff's suits were to foreclose liens of a receiver's certificates. Pointing to plaintiff's allegations, defendants argue that the certificates were in default on August 5 and 6, 1965, respectively. The suits were filed on August 23, 1967, more than two years later. Therefore, defendants argue, the suits *72 were barred by the provisions of Ill. Rev. Stat. 1965, ch. 24, par. 11-31-2 which required "[s]uch suit to foreclose such lien shall be commenced within two years after the date of default."
Plaintiff, on the other hand, contends the limitation provisions are inapplicable because they were added to the statute, effective August 5, 1965, to provide for the two-year period of limitation. Plaintiff argues that when the certificates were issued on May 21 and June 29, 1965, no period of limitation applied to suits on defaulted receiver's certificates. Moreover, it is argued, the statute relates to lien of a certificate, much like a mechanic's lien, and not to the lien of a first mortgage on real estate. By this argument, plaintiff emphasizes that it was a holder of receiver's certificates secured by trust deeds and possessed all the rights of a plaintiff who sues to foreclose a mortgage of real estate.
 1-4 A mortgage, or a trust deed, is a conveyance of real estate or assignment of personal property, without parting with the possession in either case, as security for the performance of some act, usually the payment of money. (In re Estate of Lalla, 281 Ill. App. 124, 132-33.) As to land, a trust deed is a warranty conveyance by one having legal title, with a condition of defeasance on payment of the debt it secures. (Chicago Title and Trust Co. v. Wallace, 250 Ill. App. 293, 299.) Richard A. Keefe, who executed and delivered the two trust deeds, was an appointed receiver. His receivership was court-created. (See Community Renew. Found., Inc. v. Chicago Title & T. Co., 44 Ill.2d 284, 255 N.E.2d 908.) A receiver is a custodian of the assets involved in a litigation. Title to the assets remains in the owner or owners who are parties in the proceedings which lead to appointment of the receiver. The receiver is the managing agent of the property for the benefit of the parties. (McIlvaine v. City National Bank and Trust Co. of Chicago, 314 Ill. App. 496, 42 N.E.2d 93; Knickerbocker v. McKindley Coal and Mining Co., 67 Ill. App. 291, 294.) We have no statute which conferred title to the receivership property on Keefe, the receiver. In this jurisdiction, absent a statute, a receiver can only acquire title to property by a conveyance. Heffron v. Gage, 149 Ill. 182, 193-94, 36 N.E. 569.
 5 This being the case, despite the court order which authorized him to execute the trust deeds, Keefe could not convey and warrant legal title to the parcels of real estate described in the two trust deeds which plaintiff sued to foreclose. Therefore, plaintiff's suits could only have been to foreclose liens of the receiver's certificates. Whether plaintiff had foreclosurable liens on the real estate described, depends on proof of compliance with the court's order and applicable law. Turner, et al. v. P. & S.R.R. Co., 95 Ill. 134, 35 Am. Rep. 144; and compare Cronin v. *73 Tatge, 281 Ill. 336, 118 N.E. 35; Rochelle Bldg. Co. v. Oak Park Trust & Savings Bank, 121 Ill. App.2d 274, 257 N.E.2d 542.
 6, 7 Whether issued by statutory authority or by exercise of general jurisdiction, a receiver's certificate is a lien on assets of the receivership. (See Cody Trust Co. v. Hotel Clayton Co., 293 Ill. App. 1, 12 N.E.2d 32; Community Renew. Found., Inc. v. Chicago Title & T. Co., supra.) A lien is property. It is a right protected by provisions of state and federal constitutions which prohibit impairment of the obligation of contract and the taking of property without due process of law. (Walker v. People ex rel Raymond, 202 Ill. 34, 66 N.E. 827; Steger v. Traveling Men's Building and Loan Ass'n., 208 Ill. 236, 70 N.E. 236; and see Armstrong v. United States (1960), 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554; Wood v. Lovett (1941), 313 U.S. 362, 61 S.Ct. 983, 85 L.Ed. 1404.) In this case, the obligations of contract which 12 of the certificates reflect was that "[o]n demand, for value received, (the receiver) ... promises to pay to bearer the sum of One Thousand and no/100 ($1000.00) Dollars, together with interest thereon at the rate of six per cent (6%) per annum from date of issuance, payable annually on the 1st day of January in each year, payable out of said property and the rents and issues thereof, * * *" One additional certificate, on the same terms, was for $775.
 8, 9 It can be seen that on the date of their issuance, these certificates were demand obligations. The holder of them had the right to their continued ownership, without modification of this right which can be caused by a two-year period of limitation. If demand for payment of principal or the interest due were followed by default, the holder could elect to delay enforcement of the certificate liens. To construe amended section 11-31-2 of chapter 24 and apply it retroactively to the certificates issued to plaintiff prior to the amendment, as urged by defendants, would impair the obligation of contract which led to issuance of the certificates. This construction would render the statute unconstitutional. (Hogan v. Bleeker, 29 Ill.2d 181, 193 N.E.2d 844; and see Pacific Mail Steamship Co. v. Joliffe (1864), 2 Wall. 450, 69 U.S. 450, 17 L.Ed. 805.) We will not adopt an unconstitutional statutory construction when a construction consistent with constitutionality appears more reasonable. Therefore, we hold that the limitation period contained in the amendment to chapter 24, par. 11-31-2 is not to be applied to receiver's certificates issued prior to August 5, 1965. As a consequence, plaintiff's suits are not barred by its provisions. See Hogan v. Bleeker, supra; compare Country Mutual Insurance Company v. Knight, 40 Ill.2d 423, 240 N.E.2d 612 and Stanley v. Denning, (Ill. App.2d), 264 N.E.2d 521.
*74 The second issue arises from defendant's contention that the receiver was ordered to issue the certificates to plaintiff "[a]s a means of paying for the demolition performed relative to the premises * * *." located at 938-944 and 1001-1005 North Wells Street, Chicago. Defendants argue that their evidence established a material failure to perform the two demolition contracts. They say that plaintiff did not fill the foundation of each demolished building "[w]ith solid fill to grade level. To the contrary, plaintiff filled the property with unfit, combustible materials in violation of the contract[s] * * *" "on completion of demolition, the site shall be filled where necessary with clear soil, cinders or other inorganic material * * *."
To meet this contention, plaintiff points out that the trust deeds do not mention the demolition contracts. It argues that the contractual obligations were disposed by completion of the work, approval by the City of Chicago and acceptance of performance by the receiver, who, on order of the court, issued the certificates. Implicitly, plaintiff contends that defendants cannot, in these proceedings, prove a defense which Keefe failed to interpose prior to plaintiff's suits to foreclose.
 10, 11 The demolition contracts were executed by Keefe as a receiver, "[a]n agent appointed by the court to serve the parties interested." (Knickerbocker v. McKindley Coal & Mining Co., supra.) Defendants had the right to meet plaintiff's suits with the defense of material failure to perform the demolition contracts. By analogy, this was a suit to foreclose a mechanic's lien. The property owner in such a suit, against the contractor or mechanic, can make any defense which proves a defect, a delay or a non-performance of the contract. Booher v. Williams, 341 Ill. App. 504, 95 N.E.2d 518; Baker v. Palmer, 332 Ill. App. 284, 75 N.E.2d 50.
 12 In this case, Keefe, the receiver, testified concerning the condition of the two properties after the buildings were demolished. The project engineer who supervised borings on the two foundations described the percentage of wood that was found in the fill. In addition, photographs disclosed the content of the fill used on the properties. Plaintiff's only evidence was the testimony of an inspector who said that in his visits during the demolitions, he did not see wood used as fill. This testimony left open the possibility that the inspector did not look to see if wood was used to fill the foundation of buildings which plaintiff had contracted to wreck "[d]own to grade level, leaving only solid debris, and removing all burnable materials." Nonetheless, the trial court found in favor of plaintiff on the issue raised by the affirmative defense. This finding was against the manifest weight of the evidence. See Friedman *75 Elec. Co. v. St. Clair County Housing Auth., 23 Ill. App.2d 16, 161 N.E.2d 473.
The third and final issue is whether the trial court erred in finding in favor of plaintiff and against defendants on the counterclaims which alleged breaches of the demolition contracts. On this issue, defendants contend that according to Keefe and the project engineer, both properties require reexcavation and re-filling. The president of the wrecking company testified that he inspected the two lots and estimated the costs for re-excavating and re-filling to be between $15,000 to $20,000. He said that a reasonable charge for this kind of work in the City of Chicago was $2 to $2.75 per cubic yard. The breakdown for each parcel was $6,610 to $9,088.75 for 938-944 North Wells and $6,112.20 to $8,404.28 for 1001-1005 North Wells. Defendants argue that this evidence proved they were damaged. They insist it was error for the trial court to find in favor of the plaintiff and against them on the counterclaims.
In resolving this issue, we observe that plaintiff did not refute the testimony of defendant's witnesses nor the evidence represented by the photographs offered in their support. Plaintiff's argument is a repetition of the one it advanced to meet defendant's contention concerning the affirmative defenses: that Keefe, the receiver, did not complain about plaintiff's performance of the demolition contracts; therefore, defendants are bound by this failure.
 13-15 It is an oft-repeated principle that "[w]here the trial court has seen and heard the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial court and will not disturb the findings unless they are manifestly against the weight of the evidence." (Brown v. Zimmerman, 18 Ill.2d 94, 102, 163 N.E.2d 518; Narowetz Heating and Vent. Co. v. Solar Sales, Inc., 86 Ill. App.2d 387, 392, 230 N.E.2d 37.) But, it is our duty to carefully examine the record to determine whether the evidence justifies the judgment. If, from a consideration of the record as a whole it appears to us that the evidence does not justify the judgment, it is our plain duty to reverse. (Sharkey v. Sisson, 310 Ill. 98, 114-15, 141 N.E. 427: Friedman Elec. Co. v. St. Clair, County Housing Auth., 23 Ill. App.2d 16, 19, 161 N.E.2d 473.) In this case, defendants had the right to counterclaim. (Rozema v. Quinn, 51 Ill. App.2d 479, 201 N.E.2d 649.) The evidence tending to prove damages was not refuted. Therefore, it was error for the trial judge to enter judgment in favor of plaintiff and against defendants on the counterclaims.
For these reasons, we reverse and remand the causes for new trial, *76 with directions that plaintiff and defendants be given the opportunity to file new, additional or amended pleadings; and that after trial court determines the rights, duties and obligations of the parties, it enter a judgment consistent with the views expressed in this opinion.
Reversed and remanded with directions.
SCHWARTZ and STAMOS, JJ., concur.
NOTES
[1] Apparently, the statutory authority to which the trial court referred was Ill. Rev. Stat. 1963, ch. 24, pars. 11-31-1 and 11-31-2.
[2] It appears, however, that as to Guaranty Bank, plaintiff alleged that the date of default was August 6, 1965.
[3] When this appeal was first reached for oral argument, we called attention of counsel to Calumet Fed. Sav. & Loan Ass'n. v. Markman, 50 Ill. App.2d 430, 200 N.E.2d 419 and Harlem Sav. Ass'n. v. Lesniak, 91 Ill. App.2d 194, 234 N.E.2d 160, two decisions of this court which cast doubt on the finality, hence the appealability, of the judgment of foreclosure and sale in this case. Memoranda which counsel have filed convince us that the judgment that ordered foreclosure and sale is final and appealable.