**WEST SUBURBAN BANK OF DARIEN,**
Plaintiff–Appellant,

v.

**BADGER MUTUAL INSURANCE COMPANY,** Defendant–
Appellee.

No. 96–3682.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1997.

Decided April 9, 1998.

Rehearing Denied April 30, 1998.

Mark F. Kalina (argued), Guerard, Kalina & Butkus, Wheaton, IL, for Plaintiff–Appellant.

Richard D. Heytow (argued), Jeffrey L. Warnick, Crystal, Heyton & Warnick, Chicago, IL, Defendant–Appellee.

Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant, West Suburban Bank of Darien ("West Suburban"), sued the defendant-appellee, Badger Mutual Insurance Company ("Badger"), for recovery under the provisions of a fire insurance policy after fire destroyed a restaurant located in Bolingbrook, Illinois, insured by Badger.[1] West Suburban held two loans on the destroyed building and its contents: the first was secured with a mortgage on the property, and the second was secured through a collateral assignment of beneficial interest in a land trust which held title to the property. After the fire, and after the sale of the land, the funds realized were insufficient to satisfy West Suburban's interest on the two loans. West Suburban brought suit after Badger refused to make good on the loan covering the beneficial interest in the land trust holding title to the property. The district court denied West Suburban's claim that it was entitled to recover for the loan secured by the beneficial interest under the provisions of the fire insurance policy and entered summary judgment in favor of Badger, holding that the provisions of Badger's insurance policy did not cover the collateral assignment of beneficial interests in the land trust. We affirm.

## I. BACKGROUND

Theodore and Frances Somenek were the president and vice president, respectively, of Dough, Inc. ("Dough"), owner of Aurelio's Family Pizzeria ("the Pizzeria") in Bolingbrook. On February 10, 1988, West Suburban loaned Dough $580,000. As collateral for the loan, Dough and West Suburban executed two promissory notes, a mortgage and a security assignment of the beneficial interest in a land trust which was the owner of the Pizzeria property. One promissory note for $315,000 was secured by a mortgage on the Pizzeria. The other promissory note obligat-

---

1. On April 28, 1994, Badger issued a commercial insurance policy insuring the property, naming Dough, Inc., doing business as Aurelio's Family Pizzeria, as the insured and West Suburban as the mortgagee.

ed Dough for $265,000 and was secured by the Someneks' assignment of their beneficial interest in the land trust to West Suburban. The assigning instrument stated that in the event of default by either Dough or the Someneks, West Suburban would have all rights and remedies "respecting the sale or other disposition of said beneficial interest." The assigning instrument did not make any mention of the underlying property, or res, in which Dough conducted its pizza business.

On April 28, 1994, Badger issued a commercial insurance policy to Dough. Among other coverages, the contract insured against loss to the Bolingbrook business premises and commercial property in the event of fire. The policy named and referred to Dough as the insured party and West Suburban as the mortgagee. The policy provided in relevant part:

> If mortgagee (mortgage holder) is named in this policy, loss to buildings shall be paid to the mortgagee and you [i.e., Dough, the named insured] as interest appears....
> The insurance for the mortgagee continues in effect even when your insurance may be void because of your acts, neglect, or failure to comply with the coverage terms.

This provision protected West Suburban against the risk of fire loss by guaranteeing payment on the mortgage debt secured by the insured premises.

As stated earlier, on July 5, 1994, fire destroyed the Pizzeria and its contents. At the time of the fire, the $315,000 note (secured by the mortgage) had an unpaid balance of $233,082.96, and the $265,000 note (secured by the beneficial interest in the land trust) had an unpaid balance of $148,309.90. In order to effectuate the property's sale, West Suburban released its mortgage lien on the property after the fire. The proceeds from the sale totaled $315,000, an amount insufficient to cover the balance due on both loans. West Suburban placed the $315,000 in an escrow account, and after Dough filed a proof of loss with Badger, West Suburban filed a claim under the insurance policy as mortgagee, demanding payment.

After Badger repeatedly failed to respond to West Suburban's requests for payment, West Suburban filed suit against Badger on April 6, 1995. West Suburban then filed a motion for summary judgment, contending that as the insured mortgagee under the policy, it was entitled to recover the unpaid balance plus accrued interest on both notes, which, less the proceeds from the property's sale, amounted to $106,197.74. Badger filed a cross-motion for summary judgment, arguing that West Suburban should not be permitted to recover insurance proceeds for either note because: (1) West Suburban, by selling the property, had released its lien; and (2) an assignment of a beneficial interest is not a "mortgage" because a beneficial interest is only an interest in personal property, not an interest in land. On September 25, 1996, the district court granted summary judgment in favor of Badger, concluding that Badger owed West Suburban nothing for the assigned trust interest. Specifically, the district judge ruled that West Suburban was not a "mortgagee" because West Suburban's beneficial interest was merely an interest in personal property and not an interest in real property. The court also ruled that West Suburban could not recover under the mortgage note because it had extinguished the debt underlying the mortgage when it sold the property and released its mortgage.[2]

## II. ISSUE

On appeal, West Suburban contends that the district court committed error in concluding that West Suburban was precluded from collecting insurance proceeds from Badger because the assignment of the beneficial interest in an Illinois land trust is distinct from a mortgage. West Suburban claims that its beneficial interest, a secured personal property interest, falls within the definition of "mortgage," and therefore, West Suburban should be permitted to collect proceeds from Badger.

## III. DISCUSSION

■ "'The construction of an insurance policy and a determination of the rights and

---

**2.** West Suburban retained in its escrow account, however, the $315,000 in proceeds from the sale of the property.

obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.'" *Hurst–Rosche Eng's., Inc. v. Commercial Union Ins.*, 51 F.3d 1336, 1342 (7th Cir.1995) (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 391, 189 Ill.Dec. 756, 760, 620 N.E.2d 1073, 1077 (1993)). We review the decision of the district court in granting summary judgment to Badger *de novo*. *See Ill. Conf. of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1364 (7th Cir.1995). A grant of summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to· interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

We next consider which state's law governs the interpretation of the insurance policy at issue. A federal court exercising diversity jurisdiction must consult the choice-of-law rules of the state in which the court sits to determine which state's substantive law should apply. *See GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). In dealing with choice-of-law issues in the area of contract law, the Illinois Supreme Court applies a "most significant contacts" test. *Id.* at 1115. Under this test,

> [a]bsent an express choice of law, insurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.

*Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 526–27, 211 Ill.Dec. 459, 462, 655 N.E.2d 842, 845 (1995) (citation and internal quotation omitted). In the case of fire insurance contracts, the laws of the state in which the insured property

principally lies will usually govern. *GATX*, 64 F.3d at 1115. Because the Pizzeria was located in Illinois, that state's substantive insurance law applies.

Under Illinois law, an insurance policy is construed so as to give effect to the intention of the parties as expressed in the contract. *See Bull v. Sun Life Assur. Co. of Canada*, 141 F.2d 456, 457 (7th Cir.1944). "Illinois courts apply the rule that any ambiguities in the provisions of an insurance policy will be construed against the drafter of the instrument, the insurer, and in favor of the insured...." *Heller v. Equitable Life Assur. Soc. of U.S.*, 833 F.2d 1253, 1256 (7th Cir.1987) (citations omitted). However, this Court must not create ambiguity where none exists; "where ... there is no ambiguity, [the courts] will not ignore the *very plain language of the policy.*" *Id.* (citation omitted). In determining if an ambiguity exists in a policy, this Court "should consider the subject matter of the contract, the facts surrounding its execution, the situation of the parties, and the predominant purpose of the contract which is to indemnify the insured." *State Farm Fire & Cas. Co. v. Moore*, 103 Ill.App.3d 250, 256, 58 Ill.Dec. 609, 614, 430 N.E.2d 641, 646 (2d Dist.1981) (citing *Dora Township v. Indiana Ins. Co.*, 78 Ill.2d 376, 36 Ill.Dec. 341, 342, 400 N.E.2d 921, 922 (1980)).

Based on the terms of Badger's insurance policy and Illinois case law concerning the rights of holders of beneficial interests in land trusts, the district court was correct in its determination that West Suburban is not entitled to recover for the $265,000 note, secured only by a beneficial interest. First, the terms and language of the policy were unambiguous and were set forth with sufficient clarity to preclude a beneficial interest holder from recovering under the mortgage clause. Second, Illinois law does not support West Suburban's contention that a secured personal property interest falls within the definition of "mortgage."

## A. The Unambiguous Language of Badger's Policy

West Suburban contends that the term "mortgage," as used in the policy, is

defined under the common law to include both assignments of personal property as well as transfers of real property, thereby entitling it to recover under the provisions of the fire insurance policy. The declarations page of the policy identified West Suburban as the insured "mortgagee." Based on the reference in the policy, West Suburban argues that a beneficial interest holder falls within the plain and ordinary use of the term "mortgagee." However, when the language of an insurance policy is unambiguous, as in this factual situation, the provision should be taken and understood according to its plain, ordinary, and popular meaning. *See Sell v. Country Mut. Ins. Co.*, 163 N.E.2d 547, 549, 23 Ill.App.2d 497, 501 (3d Dist.1960). A mortgage is an *"interest in land created* by a written instrument providing security for the performance of a duty or the payment of a debt." *Black's Law Dictionary* 1009 (6th ed.1990) (emphasis added). Because few parties have argued previously that "mortgage" and "mortgagee" are ambiguous, case law that defines these common terms is somewhat dated.

> The mortgagor is regarded as the owner of the land for all beneficial purposes, subject only to the rights of the mortgagee. After condition broken, the mortgagee is, as between himself and the mortgagor, the owner of the fee, and he may maintain ejectment against the mortgagor or the owner of the equity redemption. Upon default he has the right to possession against the mortgagor....

*Wolkenstein v. Slonim*, 189 N.E. 312, 313–14, 355 Ill. 306, 309 (1934); *see Ware v. Schintz*, 60 N.E. 67, 69, 190 Ill. 189, 193 (1901). As such, a mortgage has always been considered a financing agreement whereby an *interest in land*, not profits stemming from use of that land (as in a land trust), is used as collateral. *See generally Petkus v. St. Charles Sav. & Loan Ass'n*, 182 Ill.App.3d 327, 330, 131 Ill.Dec. 391, 393, 538 N.E.2d 766, 768 (2d Dist.1989). Badger's insurance policy did not substitute the terms "creditor," "lender" or "assignee of beneficial interest" for "mortgagee" in the policy. Furthermore, the mortgage clause of the policy defines the insured interest as "loss to buildings," thereby excluding profits and benefits connected

to West Suburban's beneficial interest in the property. We are of the opinion that the language of the policy is unambiguous and expresses the intent of the parties.

### B. Collateral Assignment of Beneficial Interest in Illinois Land Trust is not the Legal Equivalent of a Mortgage

Because this case turns on the legal status of a land trust beneficial interest, we will initially consider the distinctive characteristics of Illinois land trusts. First, the trustee holds both the legal and equitable title to the trust property. *See Estate of Bowgren v. C.I.R.*, 105 F.3d 1156, 1160 (7th Cir.1997) (citation omitted). A land trust beneficiary, on the other hand, is vested only with the right to possess, manage, and receive proceeds from the property. *See id.* Second, the beneficial interest in a land trust is not characterized as a real estate interest, but as an interest in personal property. *See id.* Third, the trustee's power is limited to executing the directive of the beneficiary. *See id.* And finally, in land trusts, the power of direction, which is a property interest separable from the beneficial interest, provides the possessor with the ability to direct the trustee as to the manner in which he is to deal with the property. *See id.* (citing *Kavanaugh v. Estate of Dobrowolski*, 86 Ill.App.3d 33, 41 Ill.Dec. 358, 365, 407 N.E.2d 856, 863 (1st Dist.1980)).

In considering West Suburban's claim, we must determine whether the assigned interest in this case amounts to an equitable mortgage or a beneficial interest in personal property. An equitable mortgage is controlled by Illinois mortgage law, while a beneficial interest is regulated under the Uniform Commercial Code and interpreted by Illinois case law. U.C.C. § 9–101 et seq.

Under Illinois law, there are significant differences between the benefits and consequences attached to mortgages and personal property interests in land trusts. "The purpose of using this technique [assignments of beneficial interests in Illinois land trusts as security for loans], from the borrower's point of view, is to save the time and expense of a real estate transaction, and, from the lender's point of view, to avoid the necessity

of foreclosure in the event of a default." *Wambach v. Randall,* 484 F.2d 572, 575 n. 2 (7th Cir.1973) (citation omitted). Moreover, an equitable mortgage is subject to the right of redemption and may be attached by a judgment lien, whereas a beneficial interest in an Illinois land trust is immune from these risks. *See Estate of Bowgren,* 105 F.3d at 1161. Illinois land trusts also allow for greater secrecy in real estate ownership because the identities of beneficiaries in this type of trust need not be, and frequently are not, a matter of public record. *See id.* And finally, because the beneficiary in an Illinois land trust has no legal or equitable interest in the real estate title, beneficial interests in land trusts limit exposure to personal liability for tort judgments and statutory liens. *See id.* Many of these benefits and protections associated with interests in land trusts result from the fact that Illinois courts have consistently held a beneficial interest in a land trust to be a personal property interest and not a direct interest in the real property res of the trust. *See St. Charles Sav. & Loan Ass'n v. Estate of Sundberg,* 150 Ill.App.3d 100, 104, 103 Ill.Dec. 301, 304, 501 N.E.2d 322, 325 (2d Dist.1986) ("[t]he land trust beneficiary retains a personal property interest; he does not possess a direct interest in the real estate res of the trust.... The principles applicable to acquiring a security interest in the beneficial interest of an Illinois land trust are the same as those applicable to acquiring a security interest in personalty.") (citations omitted); *Melrose Park Nat'l Bank v. Melrose Park Nat'l Bank, Trustee,* 123 Ill.App.3d 282, 287, 78 Ill.Dec. 622, 625, 462 N.E.2d 741, 744 (1st Dist.1984) ("[U]nder the Uniform Commercial Code, if only the beneficial interest in a land trust, as opposed to a deed in real estate, is pledged as security for a loan, the resulting security interest may be held to be an interest in personalty."); *Levine v. Pascal,* 236 N.E.2d 425, 428, 94 Ill. App.2d 43, 50 (1st Dist.1968) ("By placing with the trustee the full, complete and exclusive title to the real estate, both legal and equitable, the beneficiary in an Illinois land trust is left with a personal property interest only. Numerous ... cases stand for the proposition that the interest of the beneficiary of an Illinois land trust is personal property.") (citation and internal quotations and citation omitted).

Although the courts have sometimes treated beneficial interests in land trusts as equitable mortgages, beneficial interests that do not provide for the sale of the realty res of the trust upon default are routinely held to be personal property interests only. *See Melrose,* 123 Ill.App.3d at 288, 78 Ill.Dec. at 626, 462 N.E.2d at 745. The Illinois Supreme Court, in *Horney v. Hayes,* 142 N.E.2d 94, 11 Ill.2d 178 (1957), addressed the distinction between an assignment of beneficial interest in a land trust creating an equitable mortgage and an assignment creating a security interest in personalty. In analyzing the agreement in *Horney,* the court recognized the following factors as establishing a personal property right in a beneficial interest in a land trust: (1) the trust contained no provision for the sale of the trust real estate upon default;(2) the trust was not created as security for a debt; (3) assignment of the beneficial interest occurred subsequent to the creation of the trust; and (4) only the beneficial interest in the trust was pledged as security. *See id.* 142 N.E.2d at 96–97, 11 Ill.2d at 182–83. In *Melrose,* the court considered whether a security interest in the plaintiff's land trust was a personal property interest or an equitable mortgage. The court rejected the requirement that all four *Horney* factors must be satisfied to establish a personal property interest, and emphasized the fact that the trust agreement at issue did not provide for the sale of real estate upon default or make reference to the realty res of the trust, stating "[t]hese two facts are indicative of an intent to form a personal property security interest under *Horney.*" *Melrose,* 123 Ill.App.3d at 288, 78 Ill.Dec. at 626, 462 N.E.2d at 745. The court ultimately determined the security interest to be a personal property interest even though the land trust was created as security for a debt and the creation of the trust and the pledge of beneficial interest occurred simultaneously. *See id.*

This Court relied on the *Melrose* reasoning in *Capitol Bank & Trust of Chicago v. Fascetta,* 771 F.2d 1077, 1080 (7th Cir.1985), wherein we held that a land trust agreement

did not create an equitable mortgage preserving homestead rights for a debtor. "[I]f the parties chose to use this type of land trust fiction for their purposes and to convert real estate into personalty under the Uniform Commercial Code thereby waiving certain real estate rights, it appears that under current Illinois law that is their choice." *Id.* In addressing the elements essential to the creation of an equitable mortgage as opposed to a beneficial interest, we considered the most critical of the four *Horney* factors to be whether the instruments involved provided for the sale of the real estate upon default. *See id.*

In limited circumstances, Illinois courts have treated collateral assignment of beneficial interest as an equitable mortgage. In *DeVoigne v. Chicago Title & Trust Co.*, 136 N.E. 498, 501, 304 Ill. 177, 183 (1922), the Illinois Supreme Court found a beneficial interest in a land trust to be an equitable mortgage rather than an interest in personal property, thereby affording the borrower a statutory right of redemption. However, different from other cases we have considered where courts have found beneficial interests to be interests in personal property, the trust in *DeVoigne* specifically provided for the sale of the land at a public auction if the borrower defaulted, consistent with the requirements of *Horney*. *See id.*

In this case, the beneficial interest in the land trust assigned to West Suburban neither provided for the sale of the trust res upon default nor referred to the real estate in question. Thus, under the first *Horney* criteria, the $265,000 loan secured by the assignment of the beneficial interest is an interest in personal property, not real property. Without a real property interest, West Suburban is precluded from recovering its losses secured by the assignment of the beneficial interest because the mortgage clause of the fire insurance policy *only provides coverage to mortgagees.*

In the alternative, West Suburban asserts that cases resolving redemption rights which differentiate between mortgages and personal property interests are not applicable to insurance disputes because an Illinois land trust is a fiction. As such, the beneficiary's interest, when classified as personal property, is substantively indistinguishable from a mortgage. West Suburban argues that under Illinois law, a mortgage or a trust deed is "a conveyance of real estate or assignment of personal property ... as security for the performance of some act, usually the payment of money." *A.S.S. Wrecking Co. v. Guaranty Bank & Trust Co.*, 275 N.E.2d 724, 728, 2 Ill.App.3d 66, 72 (1st Dist.1971) (emphasis added) (citation omitted). Therefore, even though the beneficial interest of a land trust may be considered personal property under state law, an assignment of such interest is a "mortgage" covered by the insurance policy. However, the statement made in *A.S.S. Wrecking Co.* was made in the context of personal property liens only, and does not hold true for beneficial interests, except where the beneficial interest assignment provides for the sale of property upon default.

There are practical reasons for the courts' dissimilar treatment of beneficial interests and mortgages. If a beneficial interest and a mortgage were indistinguishable, then West Suburban, as beneficial interest holder in the land trust, would enjoy all the benefits of an Illinois land trust (e.g., secrecy, ease of transfer, avoidance of tort and tax liability, protection from statutory liens, etc.), while avoiding the financial risk of redemption and the extra premium costs needed to insure its mortgage. A review of the insurance policy reveals that the policy covered one mortgage to a limit of $250,000. If West Suburban believed, as it claims, that the insurance policy issued by Badger covered both its mortgage and its beneficial interest totaling $580,-000, then it should have adjusted for the limited coverage of the policy at the time of contract. Furthermore, under West Suburban's financial strategy, any type of security interest would give an investor the same protected rights as a mortgagee. For example, in states that use closely held corporations to achieve the same result as an Illinois land trust, a pledge of corporate stock would grant the investor the rights of a mortgagee without the usual risks and liabilities involved in real estate holdings. Moreover, the predominant purpose for creating beneficial interests in land trusts is to remove ownership

from the context of real estate, thereby allowing application of the UCC to transactions in which beneficial interests are used as collateral. *See* Henry W. Kenoe, *Land Trust Financing and the Uniform Commercial Code,* C.B.R. 418, 420 (June 1971). "It may be that language [regarding beneficial interest in land trusts] dealing with assignments of rents, receivers, and similar provisions dealing particularly with the real estate itself moves too closely to real estate mortgage documentation and may persuade the courts to characterize the transaction as a mortgage.... It appears advisable to rely upon the equity powers of the courts to protect the lender in these circumstances [when collateral is threatened] rather than have the security agreement approximate the language of the mortgage." *Id.*

West Suburban also attempts to rely on *Redfield v. Continental Cas. Corp.,* 818 F.2d 596 (7th Cir.1987), to support its theory that the distinction between beneficial interests and mortgages is a fiction which courts should in equity invalidate to protect investors. In *Redfield,* this Court held that a bankruptcy trustee could sue on a fire insurance policy on behalf of the owner of the destroyed property despite the fact that the policy did not name the owner as the insured. *See id.* at 606. We explained:

> In deciding whether plaintiff Redfield may sue for breach of the insurance contracts, we must also keep in mind the well-settled principle disfavoring forfeitures of insurance policies on technical grounds which bear no substantial relationship to the insurer's risk.... We are thus faced with a situation where a beneficial owner has suffered a substantial loss resulting from the destruction of his property by fire, but the proper parties to maintain an action to recover under the fire insurance policies which are in effect at the time of the loss cannot do so.

*Id.* West Suburban highlights this Court's statement that "[t]he Illinois land trust, a unique creation of Illinois law, is in essence only a form of real property ownership." *Id.* at 607. In the case under consideration, however, equity does not demand that this Court blur the lines between beneficial inter-

ests and mortgages because the proper parties are not precluded from bringing suit under the insurance policy. Furthermore, *Redfield's* discussion of real property ownership focused on land trusts; in its brief discussion of beneficial interests, this Court recognized that "[t]he original owner is designated as the beneficiary of the trust and retains an assignable *personal property interest* in the trust." *Id.* (emphasis added).

## IV. CONCLUSION

We think it is clear that, under Illinois law, the fire insurance policy issued by Badger covers only West Suburban's interest as a mortgagee, not as a land trust beneficiary. Moreover, West Suburban cannot recover for the loan secured by its beneficial interest in the land trust as a "mortgagee" because a mortgage is secured by real property and provides that the property may be sold upon the mortgage's default, while West Suburban's beneficial interest is an interest in personal property.

AFFIRMED.