In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2935

JUPITER ALUMINUM CORPORATION,
an Illinois Corporation,

Plaintiff-Appellant,

v.

HOME INSURANCE COMPANY and
HARTFORD STEAM BOILER INSPECTION
AND INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 3060--Robert W. Gettleman, Judge.

Argued March 31, 2000--Decided August 22, 2000

Before POSNER, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.  Jupiter Aluminum Corp.
("Jupiter") operates an aluminum mill in Hammond,
Indiana. In March 1993, the drive motor for a
reducing stand at the aluminum mill failed, and
the motor was not returned to service until two
months later. At the time of the accident,
Jupiter held an insurance policy, issued by Home
Insurance Co. ("Home"), and reinsured by Hartford
Steam Boiler Inspection and Insurance Co. ("HSB")
(collectively, "the insurance companies"), that
covered the property damage and business
interruption loss resulting from the drive
motor's failure.

Although Jupiter and the insurance companies
reached an agreement as to the amount of property
damage suffered by Jupiter, the parties could not
agree on the amount of Jupiter's business
interruption loss. To resolve the dispute over
the amount of the business interruption loss,
Jupiter requested an appraisal in accordance with
the terms of the insurance policy. The insurance
companies agreed to the appraisal, which was
concluded in January 1996. The appraisal set the
total loss at $66,105.

Dissatisfied with the amount awarded in the

appraisal, however, Jupiter filed this action for declaratory relief in April 1996, in an Illinois circuit court to set aside the appraisal award./1 The insurance companies removed the action to federal district court. See 28 U.S.C. sec. 1441(a)./2 The insurance companies asserted a counterclaim against Jupiter for unjust enrichment in order to recover the difference between the appraisal award and an advance the companies had paid to Jupiter while the parties were attempting to settle their dispute over Jupiter's business interruption loss.

The insurance companies moved for summary judgment on Jupiter's claim and on their counterclaim. The district court granted the motion and entered judgment in favor of the insurance companies. Jupiter now appeals. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I
BACKGROUND
A.

The facts as we describe them are largely not in dispute, in part because Jupiter failed to respond with an appropriate statement of material facts to the summary judgment motion tendered by the insurance companies./3 In response to the summary judgment motion, Jupiter submitted a document that simply identified, without citations to the record, those paragraphs from the insurance companies' statement of facts that Jupiter found acceptable or not acceptable. In addition, Jupiter submitted a list of portions from individual depositions that it believed to be material to the case; Jupiter failed to provide page citations to accompany some of the references to the depositions. Because the district court concluded that Jupiter's submission failed to comply with the requirements of the local rule, the court accepted the facts as set forth by the insurance companies.

Jupiter has not challenged the district court's enforcement of the local rule, and having reviewed Jupiter's submission ourselves, we agree with the district court that Jupiter did not comply with the requirements of the local rule. "'An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission.'" Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 689 (7th Cir. 2000) (quoting McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998)). Therefore, we too have accepted as true all material facts as submitted by the insurance companies and not properly contested by Jupiter./4

B.

Jupiter is incorporated in Illinois, but the company's principal place of business is Hammond, Indiana. In 1993, Jupiter held an insurance policy, issued by Home and reinsured by HSB, for its Hammond aluminum mill and one other Jupiter property in that city. The policy provided first party property, boiler, machine, and business interruption coverage. Jupiter obtained the policy through a Chicago insurance broker, Alexander & Alexander.

In March 1993, the drive motor for one of the reducing stands at the aluminum mill failed, and it was not returned to service until May 6, 1993. On May 6, Jupiter filed a claim with the insurance companies stating that it had suffered a loss of over $100,000, including its business interruption loss, as a result of the drive motor's failure. In response to this claim, the insurance companies conducted an investigation, and, after making an adjustment for Jupiter's deductible under the policy, the parties agreed that the property damage portion of Jupiter's loss amounted to $12,270.

The parties could not reach an agreement as to the amount of Jupiter's business interruption loss. In November 1993, the insurance companies paid Jupiter a $100,000 advance as partial payment for the agreed property damage loss and Jupiter's yet-unresolved claim for its business interruption loss. Jupiter estimated that its business interruption loss exceeded $500,000, and in July 1994, it submitted a proof of claim to the insurance companies in the amount of $528,113. The insurance companies, however, estimated the business interruption loss to be closer to $100,000, after accounting for the deductible.

With the parties at an impasse, Jupiter requested a formal appraisal, in accordance with the terms of the insurance policy, to determine the amount of its loss. The policy's appraisal provision reads as follows:

If the Insured and the Company fail to agree as to the amount of the loss, each shall, on the written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire and, failing for fifteen (15) days to agree upon such umpire, then on request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the county and

state in which such appraisal is pending. The appraisers shall then appraise the loss in accordance with the insurance conditions, stating separately the amount of loss, and failing to agree, shall submit their differences to the umpire. An award in writing of any two (2) shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and the umpire. The Company shall not be held to have waived its rights by any act relating to appraisal.

R.89 (Policy TR 789281, sec. I, K). The insurance companies agreed to the appraisal, and both Jupiter and the insurance companies designated their appraisers and selected the umpire in accordance with the procedure set forth in the policy. The parties agreed that the only matter to be resolved by the appraisal would be the total loss in production and sales that Jupiter had suffered while the drive motor had not been operational.

Both appraisers conducted an appraisal and then submitted findings to the umpire. In January 1996, the appraisers met with the umpire, who placed three of his own loss calculations on the table. The umpire's calculations were lower than those of the appraisers for both Jupiter and the insurance companies. The umpire then asked the appraiser for the insurance companies to choose one of the umpire's three calculations on the table. The insurance companies' appraiser picked the highest of the three, and both the umpire and the insurance companies' appraiser signed the award in the amount of $66,105 for the total loss ($53,835 of that amount represented the business interruption loss). Jupiter's appraiser refused to sign the award.

In April 1996, Jupiter filed suit in Illinois state court seeking to vacate the appraisal award. The insurance companies removed the action to federal court, and they later added a counterclaim for unjust enrichment in the amount of $33,895, the difference between the $100,000 advance and the $66,105 awarded by the umpire.

C.

After the insurance companies moved for summary judgment on both Jupiter's complaint and the insurance companies' counterclaim, the district court granted the motion and entered judgment in favor of the insurance companies on both claims.

Because this is a diversity action, the district court first had to determine which state's substantive law would govern this dispute. The

insurance policy does not contain a choice of law provision. The district court looked to the choice of law rules for Illinois, the forum state, to ascertain the appropriate choice of law rule. The district court observed that, in West Suburban Bank of Darien v. Badger Mutual Insurance Co., 141 F.3d 720, 724 (7th Cir. 1998), a case involving a fire insurance contract, this circuit regarded the situs of the insured property as the deciding factor under Illinois' conflict-of-laws rules. Following our approach in West Suburban, the district court held that Indiana law governed this action because both of the properties insured by Jupiter's policy were located in Indiana.

Under Indiana law, the district court concluded, the appraisal in this case was binding on the parties. To reach this conclusion, the district court relied on the decision of the Court of Appeals of Indiana in Atlas Construction Co. v. Indiana Insurance Co., 309 N.E.2d 810 (Ind. Ct. App. 1974), in which the court held that an appraisal is binding unless it can be demonstrated that the appraisal was unfair or unjust. The district court also looked to our more recent application of Atlas in FDL, Inc. v. Cincinnati Insurance Co., 135 F.3d 503 (7th Cir. 1998), in which we held that, under Atlas, the parties were bound to their appraisal. In Jupiter's case, the district court explained, Jupiter had not come forth with any objective evidence to establish that the umpire had been biased or partial; therefore, the district court concluded, the appraisal was binding on these parties./5

II
DISCUSSION
A.

We review de novo the district court's grant of summary judgment. See West Suburban, 141 F.3d at 724. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The interpretation of an insurance policy is a question of law that is an appropriate subject for disposition by way of summary judgment. See Hurst-Rosche Eng's, Inc. v. Commercial Union Ins. Co., 51 F.3d 1336, 1342 (7th Cir. 1995). We also review de novo the district court's choice of law determination. See Gramercy Mills, Inc. v. Wolens, 63 F.3d 569, 572 (7th Cir. 1995).

B.

   We begin our analysis by reviewing the choice of law determination of the district court. Federal courts sitting in diversity must look to the conflict-of-laws rules of the forum state for the applicable substantive law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); West Suburban, 141 F.3d at 724. The forum state in this case is Illinois; therefore, we must look to Illinois' conflict-of-laws rules. When an insurance policy lacks a choice of law provision, Illinois courts employ a "most significant contacts" test to determine the governing substantive law for the contract. Under this test:

   Absent an express choice of law, insurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.

Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co., 655 N.E.2d 842, 845 (Ill. 1995) (quotation marks and citation omitted). "While all these factors must be considered in the choice of law analysis, the location of the insured risk is given special emphasis." Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill., 643 N.E.2d 1280, 1287 (Ill. Ct. App. 1994) (citing Restatement (Second) of Conflict of Laws sec. 193 (1971))./6 However, "the location of the subject matter of the contract, such as the location of the risk insured by an insurance policy, is entitled to little weight when the subject matter or risk is located in more than one state." Employers Ins. of Wausau v. Ehlco Liquidating Trust, 723 N.E.2d 687, 694 (Ill. Ct. App. 1999) (citing the Restatement sec. 193).

   Jupiter submits that, under Illinois' "most significant contacts" test, this case should be governed by Illinois law. According to Jupiter, Illinois has the most significant contacts with this insurance policy. It emphasizes that the policy was purchased, delivered and signed by an Illinois company, the insurance broker that obtained the policy for Jupiter was based in Illinois, the loss was suffered by a company incorporated in Illinois, and the suit was filed originally in an Illinois court. Jupiter also emphasizes that in Lapham-Hickey, which also involved an insurance policy obtained by an Illinois company, the Supreme Court of Illinois applied the substantive law of Illinois even

though the insured property was not located in Illinois.

Jupiter is correct in pointing out that the policy at issue here was purchased, delivered and signed by an Illinois company, that Jupiter obtained the policy from an Illinois-based broker, that the loss was suffered by an Illinois company, and that Jupiter initially filed suit in an Illinois court. Nevertheless, we cannot accept the contention that the courts of Illinois would apply Illinois law in resolving the merits of this action. Both of the properties insured by Jupiter's policy are located in the same state-- Indiana. Thus, the situation in Lapham-Hickey is inapposite, and the rationale of that case cannot control the analysis here. The policy at issue in Lapham-Hickey insured properties located in six different states; had the Supreme Court of Illinois ruled that it would interpret the policy according to the law of the states in which the insured properties were located, the same insurance policy would have been subject to different interpretations under the laws of six different states. See Lapham-Hickey, 655 N.E.2d at 845. The court in Lapham-Hickey applied Illinois law in that case in order "to obtain a consistent interpretation of the policy." Id. The concern over obtaining different interpretations of the same insurance policy, which animated the court's decision in Lapham-Hickey, simply is not present in Jupiter's situation.

When we have applied Illinois' "most significant contacts" test to other insurance policies covering properties or risks located in one state, we have held that the law of the state in which the insured property can be found will usually govern. See West Suburban, 141 F.3d at 724; Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1122-23 (7th Cir. 1998); GATX Leasing Corp. v. National Union Fire Ins. Co., 64 F.3d 1112, 1115 (7th Cir. 1995). Because Jupiter's policy insured against property damage and business interruption loss for properties located only in Indiana, we shall follow our previous application of Illinois' "most significant contacts" test. Therefore, we apply the substantive law of Indiana to this case.

C.
1.

Having determined that Indiana law governs this action, we next address Jupiter's contention that it should not be bound by the appraisal award. "The Courts of Indiana will not hesitate to set aside an appraisal award if it is tainted with fraud, collusion or partiality for appraisers,

though selected by the respective parties, 'must act free from bias, partiality, or prejudice in favor of either of the parties.'" Atlas, 309 N.E.2d at 813 (quoting Insurance Co. of N. Am. v. Hegewald, 66 N.E. 902, 905 (Ind. 1903)). "When, however, the award is uninfected with such unfairness or injustice, it is not to be set aside and replaced by the subjective judgment of a reviewing court." Id. The Supreme Court of Indiana has endorsed the approach taken by the Court of Appeals of Indiana in Atlas. See Carroll v. Statesman Ins. Co., 509 N.E.2d 825, 827 (Ind. 1987) (adopting the Atlas holding as applied by the Court of Appeals of Indiana in Carroll v. Statesman Ins. Co., 493 N.E.2d 1289 (Ind. Ct. App. 1986)).

Applying the holding in Atlas to the present dispute, the district court held that Jupiter and the insurance companies were bound by the appraisal award because, like the parties in Atlas, they had submitted voluntarily to the appraisal as provided by the insurance policy. We agree with the district court's assessment. Under Indiana law, an appraisal is binding unless it can be shown that the appraisal is infected with unfairness or injustice. See Atlas, 309 N.E.2d at 813. This was also our holding in FDL, Inc. v. Cincinnati Insurance Co., 135 F.3d 503 (7th Cir. 1998). See id. at 505.

Jupiter contends that the policy does not state that an appraisal would be binding and that it never agreed to a binding appraisal. Jupiter also insists that our decision in FDL, Inc. is inapplicable to the present case because the appraisal clause in FDL, Inc. explicitly stated that the appraisal would be binding. We cannot accept Jupiter's argument. Under Indiana law as set forth in Atlas, an appraisal is binding even if the appraisal provision does not state explicitly that the appraisal will be binding. The appraisal clause for the insurance policy at issue in Atlas did not state that the appraisal would be binding; nevertheless, the court ruled that the parties were bound by it absent a showing of unfairness or injustice. See 309 N.E.2d at 813. In fact, the language in the appraisal provision in Atlas is strikingly similar to the one in Jupiter's policy. The appraisal provision in Atlas stated:

"'Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value of the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing

for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value, and loss to each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.'"

Atlas, 309 N.E.2d at 811-12 (quoting the policy) (court's emphasis omitted). Just as in the policy at issue in Atlas, the strongest indication in Jupiter's policy that the appraisal would be binding can be found in the statement that the appraisal award "shall determine" the amount of the loss. R.89 (Policy TR 789281, sec. I, K). These two appraisal provisions are not distinguishable in a principled manner. Under Atlas, therefore, Jupiter and the insurance companies are bound by the appraisal that they voluntarily undertook--unless Jupiter can establish that the appraisal was unfair or unjust as defined by the court in Atlas.

2.
   In an effort to establish that the appraisal was unfair and unjust, Jupiter claims that the appraisal should not be binding because of the umpire's "[m]isfeasance." Appellant's Br. at 21. According to Jupiter, the appraisal should be cast aside because the umpire allowed the insurance companies' appraiser to pick the award amount, never visited Jupiter's aluminum mill, and made other mistakes in his appraisal. At the very least, Jupiter submits, it should be able to explore these alleged problems at trial and, "[i]f true," the problems would make the appraisal nonbinding. Appellant's Br. at 22.

   Although making these assertions, Jupiter has not provided sufficient evidence to substantiate them. Its most concrete argument, and one that is supported by the record, is that the umpire allowed the insurance companies' appraiser to "pick" the award amount. Jupiter's allegation in this regard, however, does not establish a question of material fact regarding the propriety of the appraisal; each of the umpire's three independent calculations were lower than those submitted by the appraisers for Jupiter and the insurance companies. Standing alone, the fact that the umpire's calculations were all lower does not suggest that the umpire was somehow partial or prejudiced. Because Jupiter has failed

to provide sufficient record evidence to support its assertions of misfeasance, the appraisal is binding, and the amount of Jupiter's business interruption loss has been set. Thus, summary judgment in favor of the insurance companies was proper on both Jupiter's claim and the insurance companies' counterclaim.

Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

/1 An amended complaint was later filed in January 1998. The amended complaint sought damages under the policy.

/2 This action falls within the district court's diversity jurisdiction, 28 U.S.C. sec. 1332(a), because the parties are of diverse citizenship and because the amount in controversy exceeded the $50,000 minimum required in 1996, when the action was removed to federal court. See Cook v. Winfrey, 141 F.3d 322, 326 (7th Cir. 1998). The statutory minimum for establishing diversity jurisdiction has since been increased to an amount in excess of $75,000.

/3 On a motion for summary judgment, Local Rule 12(N) for the Northern District of Illinois required the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of uncontested facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." No. Dist. Ill. Local Gen. R. 12(N)(3)(a). Local Rule 12(N) further provided that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." No. Dist. Ill. Local R. 12(N)(3)(B).

We note that, effective September 1, 1999, the Northern District of Illinois amended its local rules. Local Rules 12(M) and 12(N) have been replaced by Local Rule 56.1. The parties in this case made their filings under the former designation, and we have used that nomenclature for the sake of clarity.

/4 See, e.g., Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000) (approving of the district court's enforcement of a comparable

local rule and accepting as true all facts not properly contested by the non-moving party); Brasic v. Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997) (enforcing Local Rule 12(N) of the Northern District of Illinois and accepting those facts not properly contested).

/5 In its complaint, Jupiter claimed that the appraisal clause was not binding under section 12 of the Uniform Arbitration Act, 710 ILL. COMP. STAT. 5/12. The district court held, however, that the Uniform Arbitration Act was not applicable under Indiana law because this case involved an appraisal and not an arbitration. In its submissions to this court, Jupiter has not questioned the district court's ruling regarding the applicability of the Uniform Arbitration Act; consequently, Jupiter has forfeited this issue.

/6 The Restatement states:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws sec. 193. The commentary to this section further states: "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." Id. sec. 193 cmt. b.